# Richmond.

Flook and Others v. Armentrout's Adm'r and Others.

November 20, 1902.

1. Limitations—*Suit to Avoid Deed for Actual Fraud.*—The act of limitation of five years does not apply to a suit to set aside a conveyance for actual fraud.
2. Fraudulent  C o n v e y a n c e s—*Privity of Grantee—How Privity Charged.*—In a suit to set aside a deed on the ground of the actual fraud of the grantor, the privity of the grantee in the fraud of the grantor is sufficiently alleged by charging that the deed was made, not only without any valuable consideration, but with intent to hinder, delay, and defraud the creditors of the grantor. The charge as made necessarily implies such privity, though the better practice is to charge it expressly.
3. Fraudulent Conveyances—*Notice to Grantee—How Notice Established.*—In order to charge a grantee with knowledge of his grantor's fraud, it is not necessary to prove actual knowledge. It is sufficient to prove knowledge of facts and circumstances naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and enquire before consummating the transaction. If such enquiry would have necessarily led to a discovery of the fact, with notice of which he is sought to be charged, he will be chargeable with such notice whether he made the enquiry or not. But while notice may be inferred from circumstances as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and be so strong and clear as to fix upon him the imputation of bad faith. Mere inadequacy of price is not sufficient to set aside a deed unless it be so gross as to shock the conscience and furnish decisive evidence of fraud. In the case in judgment, the evidence fails to establish notice to the grantees of the fraud of their grantor, if indeed there was such fraud.

Appeal from a decree of the Circuit Court of Rockingham county, pronounced February 17, 1902, in a suit in chancery,

wherein the appellee, Augustine Armentrout, administrator of Daniel Armentrout, deceased, was the complainant, and the appellants and another were the defendants.

*Reversed.*

The opinion states the case.

*Sipe & Harris* and *Ed. S. Conrad,* for the appellants.

*John E. Roller,* for appellee, Armentrout's Administrator.

HARRISON, J., delivered the opinion of the court.

By deed dated December 6, 1877, Daniel Flook conveyed to his three daughters—Eliza Flook, Martha Flook, and Frances E. Yancey—all of his real and personal property, consisting of a farm in Rockingham county, containing about four hundred acres, and the personal property owned by the grantor, consisting of horses, cattle, hogs, farming implements, and household and kitchen furniture, subject to the contingent dower rights of his wife in the real estate. This deed was acknowledged January 14, 1878, and recorded February 26, 1878. The consideration for the conveyance expressed on its face is $2,000 cash in hand paid, being for services rendered by the grantees, Eliza and Martha Flook, since 1858, and $5,000, to be paid in twelve equal annual payments, bearing even date with the deed, and bearing interest from their date, each for the sum of $416.66⅔, secured by vendor's lien reserved on the face of the deed. It appears that on June 1, 1878, eight of these bonds were assigned by Daniel Flook to Henry Armentrout in settlement of an indebtedness amounting to $3,686.64. It further appears that at the December term, 1878, of the County Court of Rockingham, the remaining four bonds were pledged by Daniel Flook as indemnity to his sureties in an official bond as executor. This pledge of these four bonds must have been subsequently released; it appearing from the answer of Daniel Flook's administrator, his intestate having died in 1882, that

these were the only bonds that came into his hands.   It further appears that in a creditors' suit, instituted March 20, 1878, against Daniel Flook and others, judgments aggregating $1,793.11, as of October, 1879, were audited.   Of these $1,543.51 were against Daniel Flook as surety.   Whether these judgments were paid off by those primarily bound therefor, or how or when they were discharged, does not appear.   It does, however, appear from a final order in the cause on the 4th of April, 1888, that they had been all satisfied, and the cause retired from the docket.

The record shows that in 1858 Daniel Flook qualified in the County Court of Rockingham as committee of the person and estate of Daniel Armentrout, a person of unsound mind.   On the 2d day of March, 1877, the Commissioner of Accounts for the County Court of Rockingham filed a settlement of the accounts of Daniel Flook as such committee, covering the period from the 1st day of January, 1858, to the 1st day of January, 1876, showing a balance due from the committee of $253.10. This balance, it appears, was paid.   In January, 1878, Daniel Armentrout's administrator instituted in the Circuit Court of Rockingham a chancery suit to surcharge and falsify this settlement of accounts of Daniel Flook, committee.   This litigation pended until April 15, 1885, resulting in a final decree of that date in favor of the administrator of Daniel Armentrout against the administrator of Daniel Flook for the sum of $2,287.61.   Execution was issued on this decree, and was endorsed by the attorney for Daniel Armentrout's administrator "to lie."

To January rules, 1888, Daniel Armentrout's administrator filed his bill in the suit now before us, setting up his decree in the last-mentioned cause of $2,287.61, as an outstanding indebtedness against Daniel Flook at the time the deed to his daughters, in 1877, was made, and charging that said deed had been made to hinder, delay, and defraud the creditors of Daniel

Flook, and especially the complainant, out of any recovery against him or his property on account of his liability as such committee. The bill further alleges that the property was conveyed for a grossly inadequate consideration; that it was worth the sum of $20,000; that the cash payment of $2,000, recited to be for services rendered by the grantees was not *bona fide,* and set up for the fraudulent purpose of defeating the claim of complainant; that for a like reason the deferred payments were strung out for twelve years; that the whole purpose of the deed was to cover up and conceal the property of the grantor from his creditors, and especially from the claim of the complainant. The prayer of the bill is that the deed may be declared fraudulent and void, and the property conveyed therein subjected to the satisfaction of the debt due the complainant. An answer was filed by the administrator of Daniel Flook, and a demurrer and answer by his daughters, to whom the property in question was conveyed. In their answer, the grantees broadly and emphatically deny every allegation of fraud and wrong-doing asserted in the bill, and declare that the consideration expressed in the deed was a full and fair price for the property; that the $2,000 cash payment was justly due for services actually rendered; and that the deferred payments were not strung out for twelve years with a fraudulent intent. Respondents declare that they have acted throughout the whole matter in perfect good faith, have paid their entire purchase money, made valuable improvements upon the property, and have expended their time, labor and money thereon since the date of their purchase in December, 1877. They emphatically deny that the deed was made to hinder and delay their father's creditors. On the contrary, they insist that the sale was made to enable their father to pay his debts. They deny every insinuation of fraud or notice of fraud, or fraudulent intent on their part, or on the part of their deceased father. While insisting that they are entitled to the protection of a court of

equity by reason of the matters set forth in their answer, they also rely upon the doctrine of laches, and the statute of limitations to protect them in the rightful possession of what they claim was a *bona fide* purchase. This controversy, in the court below, resulted in the decree appealed from, overruling the demurrer of appellants, setting aside the deed in question as fraudulent and void, and ordering a sale of the land thereby conveyed to satisfy the debt due the appellee.

If the conveyance under consideration, dated December 6, 1877, was assailed alone upon the ground that it was voluntary, the suit, not being brought until January rules, 1888, would be barred by the provisions of section 2929 of the Code, because not brought within five years after the right to avoid the deed on that ground had accrued. It is clear, however, that appellee is prosecuting his suit under section 2458 of the Code upon the ground of actual fraud, and in such a case the five-year statute of limitations does not apply. So far as necessary to be quoted, section 2458, provides that "*every conveyance . . . . or transfer of . . . . any estate, real or personal, . . . . given with intent to . . . . defraud creditors . . . . of or from what they are or may be lawfully entitled to, shall, as to such creditors, . . . . be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of fraud rendering void the title of such grantor.*"

That the grantees were purchasers for a valuable consideration cannot be denied, and therefore to declare the deed void under section 2458, two elements are necessary, and these must concur, namely:

1st. The conveyance must have been made with intent to defraud the creditor of what he may be lawfully entitled; to and

2d. To affect the title of the grantees they must have had notice of the fraudulent intent of the grantor.

The demurrer was properly overruled. It rests upon the

contention that the bill does not in terms allege that the grantees had notice of the fraud charged upon the grantor. This court has held that the privity of the grantee in the fraud of his grantor is sufficiently alleged by charging that the deed was made, not only without any consideration deemed valuable in law, but with intent to hinder, delay, and defraud the creditors of the grantor. Whilst it is clearly the better practice to charge in terms that the grantee had notice of the grantor's fraudulent intent, yet if the charge made necessarily implies such notice, as it does in the case at bar, it is sufficient. *American Net. &c. Co.* v. *Mayo,* 97 Va. 182.

There is no direct proof in the record of any fraudulent intent on the part of the appellants, nor of any knowledge by them of any fraudulent purpose on the part of the grantor. It is not necessary, however, that the grantees should appear to have had actual knowledge of the grantor's unlawful purpose. It is sufficient if they had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and enquire before consummating the transaction. If such enquiry would have necessarily led to a discovery of the fact, with notice of which he is sought to be charged, he will be considered to be affected with such notice, whether he made enquiry or not. But while the fact of notice may be inferred from circumstances as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides*. *Fischer* v. *Lee,* 98 Va. 159; *Newberry* v. *Bank,* 98 Va. 471.

In the light of the repeated statement of the law, applicable in such cases, we will proceed to the consideration of the alleged suspicious circumstances relied on by the appellee as sufficient to affect the conscience of the appellants, and to fix upon them the imputation of *mala fides*. The first of these, and that

chiefly relied on, is that the grantor was in embarrassed circumstances, and that the price agreed to be paid by appellants was wholly inadequate.

It is a well settled rule of law that mere inadequacy of price is no ground for setting aside a conveyance, unless so gross as to shock the conscience and furnish decisive evidence of fraud. *Breesee* v. *Bradfield*, 99 Va. 331. In this case it is said, citing 2 Pom. Eq. Jur., Sec. 928: "If there is nothing but mere inadequacy of price, the case must be extreme, in order to call for the interposition of equity. When the accompanying incidents are inequitable, and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."

In the case at bar it appears that the property conveyed by Daniel Flook to his daughters was assessed for taxation at $10,376, the land at $9,488, and the personal property at $888. The depositions of about forty witnesses have been taken. The estimated value per acre placed upon the land ranges from fifteen to sixty dollars per acre. A careful consideration of the evidence shows that the witnesses who practically concur in the view that the price paid was fair and reasonable, have been longest and best acquainted with the land, and are better informed as to its value than those witnesses who speak on behalf of the appellee. It must be borne in mind that the land was sold and conveyed subject to the encumbrance of the contingent right of dower of the grantor's wife, and that this burden greatly depreciates the market value of land. The evidence of value, as in most cases of this nature, is very conflicting, and therefore unsatisfactory. Upon the whole case, however, it is impossible for the court to say that the price paid was inade-

quate. Certainly it was not so grossly inadequate as to shock
the conscience of a man of common sense, or to furnish occa-
sion for setting aside the deed as fraudulent for that cause alone.

The contention that, at the date of the deed, the grantor was
in such embarrassed circumstances as to have put the grantees
upon notice that the conveyance, at the price agreed upon, was
intended to defraud his creditors is not sustained by the record.
On the contrary, the established facts are susceptible of the
construction that in making the sale the grantor was actuated
by an honest purpose to provide for the payment of his debts.
The presumption of law is in favor of honesty, and the court
cannot presume fraud unless the terms of the instrument pre-
clude any other inference. *Williams* v. *Lord & Robinson*, 75
Va. 390, 400. In a few months after the sale was made, eight
of the purchase money bonds had been assigned by the grantor
in satisfaction of his principal debt, amounting to $3,686.64.
While it does not appear precisely when and how the judgments
heretofore mentioned were paid, it does appear that every debt
the grantor owed was discharged, and that when he died, in
1882, the last four purchase-money bonds, not due until January
1, 1887, 1888, 1889, and 1890, were under his control, and
passed into the hands of his administrator as assets of the
grantor's estate. These bonds aggregated $1,666.66⅔, with
interest thereon from December 6, 1877, a sum more than
sufficient to satisfy the subsequently ascertained and established
demand of the appellee. It is further contended that a badge
of fraud is to be found in the circumstance that the deed was
dated December 6, 1877, and not acknowledged for record until
January 14, 1878, without any explanation being given of this
discrepancy. Daniel Flook being dead, and the grantees being
incompetent witnesses, it would have been difficult to make
the explanation mentioned. We cannot see, however, that
this circumstance can raise a suspicion of bad faith. It is
within common experience that where parties are living in the

country, it is not always convenient to get a notary or justice, and for this reason deeds are often not acknowledged for some time after they are written.

Another circumstance relied on to show that, if the grantees had made such enquiry as it was their duty to make, they would have discovered the fraudulent intent of their grantor, is that George W. Yancey, the husband of one of the grantees, lived beside the grantor, attended to his business, and from his proximity to him must have known all about his affairs. This is a mere presumption. Yancey was not a party to the deed. There is no proof that he had any knowledge on the subject, and none that he vouchsafed any information to the grantees that would have put the most suspicious upon enquiry.

Another circumstance relied on as showing fraud is that Mrs. Flook did not unite in the deed. Under the facts of this case we are unable to see what ground for suspicion of bad faith this circumstance affords. The wife could not be required to unite in the deed releasing her dower rights, and the fact that she was unwilling to do so, and that the absence of such release would make it difficult to sell to a stranger, may have suggested to the grantor the idea of selling to his daughters, subject to the dower rights, for the purpose of raising the means with which to pay his debts.

Another circumstance insisted upon is that Daniel Flook made a dishonest settlement of his accounts as committee for Daniel Armentrout before the Commissioner of Accounts in March, 1877. The bill alleges this to be the fact, but the charge is emphatically denied by the answer, and there is no proof to sustain it. Daniel Flook assumed this trust in 1858. After the intervention of years, the civil war, and possible loss of evidence, he settled his accounts in 1877. It does not follow necessarily that because, in a subsequent settlement made after he was dead, a liability was ascertained, that the first settlement was made with the dishonest purpose of defrauding appellee.

The evidence shows that at the date of the deed in question the grantor was advanced in years; that he was a man of high character, and had borne a good reputation for honesty and integrity all his life among his neighbors.    There is no evidence to raise a suspicion even that the grantees had any knowledge of their father's accounts as committee for Daniel Armentrout. If they are chargeable with any knowledge on the subject, it is only that disclosed by the public records, viz.: That he had settled his accounts before an authorized official, from which settlement it appeared that he owed nothing on that account. They can hardly be presumed to have known, if such was the fact, that the recorded settlement was false, and that one would be made subsequently bringing their father in debt.

We have commented upon the more important incidents connected with the transaction under consideration, and, without prolonging this opinion to consider in detail others sugggested as suspicious, it must suffice to say that, when all the circumstances relied on to show that the appellants were guilty of actual fraud in making the purchase in question of their father are considered in the light of the facts disclosed by the record, the imputation of *mala fides* has not been fastened upon them with that clearness and force which is required in making out a case of fraud.

The record does not show what has become of the four bonds that went into the hands of the administrator of Daniel Flook. The bill alleges that they have not been paid.    The answer of the administrator admits that they came into his hands, and says that they are now on file in some chancery suit.    The answer of appellants declares that these bonds passed into the hands of their father's administrator, and that they will be prepared to show at any time how the same have been paid off, or discharged.    With the exception of these allegations the record is silent on the subject.    It is apparent that, in the lower court, the issue made by the pleadings as to the payment

Opinion.

of these bonds was ignored or subordinated to the question whether or not the deed from Daniel Flook to his daughters was fraudulent. If they have been paid to the administrator of Daniel Flook, deceased, his being the proper hand to receive payment, the debt is discharged, and there is no liability on the obligors for his application of the proceeds. If, on the other hand, they have not been paid, by the terms of the deed they constitute a vendor's lien upon the land, which should be enforced in these proceedings. The matter being susceptible of proof, and none having been taken, the bill ought not to be dismissed, but the cause remanded for further prosecution or enquiry along the lines suggested, if the appellee shall be so advised.

For these reasons, the decree appealed from must be reversed, and the cause remanded for such further proceedings, not in conflict with this opinion, as may be proper.

*Reversed.*