Richmond

EXCALIBUR INSURANCE COMPANY

V.

WILLIAM E. SPELLER AND ARTHUR C. ERMLICH

August 30, 1979.

Record No. 771663.

Present: All the Justices.

John F. Rixey (*Rixey and Heilig,* on brief), for appellant.

H. H. Hunter Clarke; Allan D. Zaleski (*Thomas J. Harlan, Jr.; Doumar, Pincus, Knight & Harlan; Shapiro & Zaleski,* on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

The issues framed on this appeal underlie the question whether a motion for judgment was time-barred. The parties agreed with the trial court's view that the applicable statutory limitation is one year; for purposes of this opinion only, we accept that view.

The facts, some of which were detailed in *Caputo* v. *Holt, Administratrix,* 217 Va. 302, 228 S.E.2d 134 (1976), are stipulated. Catherine Speller died August 26, 1972 from injuries sustained when struck by a truck driven by Francis L. Caputo (Caputo) and insured by Excalibur Insurance Company (Excalibur). On September 1, 1972, William E. Speller (Speller), listing himself as decedent's son and only heir and claiming the preference accorded "distributees" under Code § 64.1-118, qualified before the clerk of the court as administrator of the estate. On September 5, 1972, Speller and the attorney for the estate, Arthur C. Ermlich (Ermlich), settled a claim for wrongful death with Excalibur for $20,000. Excalibur's draft was made payable to the estate and Ermlich jointly.

A year later on September 13, 1973, an attorney representing de-

cedent's three surviving sisters advised Excalibur that Speller was not decedent's son and, on October 8, 1973, filed a petition to remove him as administrator. On October 19, 1973, Excalibur notified Ermlich that it would claim a refund of the settlement money "[i]f it appears that William E. Speller was not a son and heir" and requested "copies of such documents as [Ermlich] might have" concerning the question. At the hearing on the petition, the evidence showed that Speller was not decedent's son or heir.. All concerned agreed that neither Speller nor Ermlich was aware of that fact until some time after settlement funds had been received and disbursed. By order entered November 26, 1973, the court accepted Speller's resignation and appointed Eleanor Holt (Holt), one of decedent's sisters, administratrix of the estate.

On December 20, 1973, Holt commenced a wrongful death action against Caputo and the owner of the truck. Defending that action for its insured, Excalibur filed a plea of release which the court denied November 4, 1974. The jury awarded Holt damages in the sum of $25,000 and, on November 25, 1974, Excalibur filed the instant motion for judgment against Speller and Ermlich seeking damages of $30,000 "for monies had and received."

Challenging the denial of its plea of release and assigning certain other errors, Excalibur then appealed to this Court from the judgment Holt had won against its insured. Holding, *inter alia,* that Speller's settlement with Excalibur, which had never been court-approved as required by law, was not binding upon Holt or the beneficiaries of the wrongful death statute, we affirmed the judgment in an opinion published September 2, 1976. *Caputo* v. *Holt, Administratrix, supra.*

Meanwhile, in response to Excalibur's motion for judgment against them, Speller and Ermlich had filed demurrers and pleas of the statute of limitations. In a letter opinion dated March 24, 1975, the late Judge Thomas M. Johnston considered the demurrers and ruled that "the allegations are sufficient to state a cause of action against the individual defendants, based upon constructive fraud brought about by the mutual mistake of Excalibur's Insurance adjuster and the defendants as to the parentage of William Speller." On July 15, 1977, his successor, Judge Morris B. Gutterman, issued a letter opinion quoting Judge Johnston's language. Holding that the one-year statute of limitations began to run on September 5, 1972, the date of the settlement, Judge Gutterman ruled that Excalibur's action filed November 25, 1974 was time-barred. By final order entered August 11, 1977, the pleas of the statute of limitations were sustained and Excalibur's action was dismissed from the docket.

■ Historically, courts of equity have recognized certain exceptions to the doctrine of laches and the defense of the statute of limitations.

"No lapse of time, no delay in bringing the suit, however long, will defeat the remedy in cases of fraud or mutual mistake, provided the injured party, during all this interval, was ignorant of the fraud or mistake without fault on his part. The duty to commence proceedings to assert his rights can only arise upon the discovery of the fraud or mistake; and the possible effect of his laches will begin to operate only from that time." *Craufurd* v. *Smith,* 93 Va. 623, 631, 23 S.E. 235, 237 (1896).

In courts of law, the equitable exceptions were not applied.

"The principle seems settled in Virginia that in cases of mutual mistake and fraud courts of law and courts of equity apply different rules with respect to the defense of the statute of limitations. The statute in such cases makes no exception, and in a court of law the limitation runs from the date of settlement and payment." *Grove* v. *Lemley,* 114 Va. 202, 204, 76 S.E. 305, 306 (1912).

In the enactment of the Code of 1919, the General Assembly added the following sentence to § 2921 of the Code of 1887 and renumbered the statute § 5811:

"The right to recover money paid under fraud or mistake shall be deemed to accrue, both at law and in equity, at the time such fraud or mistake is discovered, or by the exercise of due diligence ought to have been discovered."

Codifying the chancery rule, this amendment extended the equitable exceptions to cases at law to recover money paid under fraud or mistake. In the enactment of the Code of 1950, the language of the amendment was set apart in a separate statute, Code § 8-14.[1]

This statute was in effect during the proceedings below. However, this case was tried upon the theory that plaintiff's cause of action was, in the language of the trial judges, one "based upon constructive fraud brought about by the mutual mistake", and defendants argue that the statute is not applicable "in instances of constructive fraud".[2] Hence,

---

[1] The rule, as revised, now appears as a part of Code § 8.01-249 (Repl. Vol. 1977). Acts 1977, c. 617.

[2] Although it appears this case is one of mutual mistake as well as constructive fraud, we treat it as it was tried.

they say, the cause of action accrued at the time the constructive fraud occurred rather than when it was discovered.

■ Defendants cite no case holding that Code § 8-14 applies only in instances of actual fraud. Rather, they support their argument by analogy to our decision in *Housing Authority v. Laburnum Corp.*, 195 Va. 827, 80 S.E.2d 574 (1954). There, the fraud in issue was fraud in the concealment of a cause of action accrued earlier. We held that "[c]onstructive fraud is not such as will toll the running of the statute of limitations" and that the "character of fraud necessary . . . must be of a variety involving moral turpitude" and some deliberate "trick or artifice" designed "to conceal the discovery of the cause of action". *Id.* 195 Va. at 840, 80 S.E.2d at 582.[3]

But the rule we have defined in cases of fraudulent concealment of a cause of action cannot be applied to alter the express mandate of a statute controlling cases where fraud or mistake is the gravamen of the cause of action. Code § 8-14 makes no distinction between actual fraud and constructive fraud, and we construe the statute to contemplate both. Accordingly, we hold that the trial court erred in ruling that plaintiff's cause of action accrued at the time Excalibur settled with Speller and Ermlich.

■ Alternatively, defendants contend that, even if Code § 8-14 was applicable, plaintiff discovered or should have discovered the so-called constructive fraud more than a year before its November 25, 1974 motion for judgment was filed. They reason that plaintiff "had notice of the question of William Speller's maternity on September 13, 1973", the date of the letter from the attorney for decedent's sisters. And the letter of October 19, 1973 written by plaintiff's attorney shows, they say, that plaintiff had "knowledge . . . of the probability that a problem existed".

We agree that a question was raised and that plaintiff was on notice thereof. We do not agree, however, that this constituted "discovery" within the intendment of the statute. Under Code § 64.1-118, the court or clerk is given "jurisdiction to hear and determine the right of administration" of the estate of an intestate and, during the 30 days following death, "distributees" are accorded preference. Speller's appointment as administrator only seven days after decedent's death was a quasi-judicial determination that Speller was a distributee. Notwithstanding the question about Speller's maternity raised later, that determination was and remained a verity until entry of the order of

---

[3] We applied the same principle in a similar context in *Culpeper N. Bank* v. *Tide. I. Co.*, 119 Va. 73, 89 S.E. 118 (1916).

November 26, 1973 which, in effect, reversed that determination. Until that final adjudication of the question, no degree of diligence on plaintiff's part could have "discovered" the "constructive fraud brought about by the mutual mistake" which was the basis of plaintiff's cause of action.

We hold, therefore, that under the provisions of Code § 8-14, plaintiff's right to recover the money it paid defendants accrued on November 26, 1973. It follows that its November 25, 1974 motion for judgment, filed promptly after its plea of release in *Caputo* was denied, was not time-barred. The judgment order is reversed, plaintiff's motion for judgment is restored to the docket, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*