**In re L.A. CLARKE & SON, INC., Debtor.**

**L.A. CLARKE & SON, INC., Plaintiff,**

**v.**

**Constance DONALD and Newton Asphalt Co., Inc. of Virginia, Defendants.**

**Bankruptcy No. 83–00166.
Adv. No. 84–0151.**

United States Bankruptcy Court, District of Columbia.

April 18, 1986.

Arnold B. Podgorsky, Cadwalader, Wickersham & Taft, Washington, D.C., for plaintiff.

Douglass Bywater, Tate & Bywater, Vienna, Va., for defendant Constance Donald.

### OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Before the Court is a motion filed by defendant Constance Donald ("Donald") for summary judgment denying all relief sought by plaintiff/debtor L.A. Clarke & Son, Inc. ("Clarke"). The motion raises solely the defense that Clarke's complaint

against Donald was filed too late—that it is barred by applicable statutes of limitations.

### 1. *Clarke's claims against Donald.*

Clarke filed a six-count complaint against Donald and against co-defendant Newton Asphalt Co., Inc. of Virginia ("Newton") on June 8, 1984. Since Clarke filed its voluntary Chapter 11 bankruptcy petition on March 11, 1983, the complaint was filed within the two-year grace period allowed by 11 U.S.C. § 108(a)(2).[1] Section 108(a)(2) extends the time for filing a complaint if under "applicable non-bankruptcy law ... [the limitations] period has not expired before the date of the filing of the petition..." Thus, the question in this case is whether relevant limitations periods expired before March 11, 1983.

All six counts of the complaint rely upon 11 U.S.C. § 544(b), which empowers a bankruptcy trustee[2] to "avoid any transfer ... that is voidable under applicable law by a creditor [of Clarke] holding an unsecured claim ..." The "applicable [nonbankruptcy] law" upon which Clarke relies is that of Virginia.[3]

Count 1 asserts that the notes now held by Donald are voidable under Va.Code § 55–81,[4] which declares "void as to [prior] creditors" any "transfer ... which is not upon consideration deemed valuable in law..." Count 2 relies upon Va.Code § 55–80,[5] which declares void transfers made "with intent to delay, hinder or defraud creditors ..." Count 3 repeats the allegations of "voluntary conveyance" in violation of § 55–81 and "intent to defraud" in violation of § 55–80 and further alleges that Donald was unjustly enriched. Count 4 repeats all of the above allegations and demands an accounting for all payments received pursuant to the notes. Count 5 repeats the same allegations and demands equitable subordination of Donald's $219,353.04 claim against Clarke, pursuant to 11 U.S.C. § 510(c). Count 6 repeats the same allegations and goes on to allege duress, undue influence, breaches of fiduciary duty, and unjust enrichment, concluding that Clarke is entitled to recover on a constructive trust theory.

### 2. *The undisputed facts.*

The undisputed facts are as follows: On September 29, 1975, Constance Donald, her two stepsons Michael and Lucien Blaine Clarke, Jr., the Estate of Lucien Blaine Clarke, Sr. ("the Probate Estate") and the corporation L.A. Clarke & Son, Inc. ("Clarke") entered into (a) a Settlement

---

1. Had a trustee been appointed in this case, 11 U.S.C. § 546(a) would allow "two years after the appointment" of the trustee.

2. And which by virtue of 11 U.S.C. § 1107(a) also empowers a debtor in possession such as Clarke.

3. Neither party contends that any nonbankruptcy law other than that of Virginia applies to any of the transactions at issue. The real property involved is located in Virginia; Clarke is a Virginia corporation, and its principal place of business is located in Virginia; and Newton is also a Virginia corporation. There is no indication on this record that any other jurisdiction has more substantial contacts than Virginia.

4. The full text of § 55–81 is:
   Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that

account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

5. The full text of § 55–80 is:
   Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Agreement and (b) a Sales Agreement. Under the Sales Agreement, the Probate Estate sold certain real estate (two quarries in Fairfax County, Virginia) to Clarke; in return Clarke, *inter alia*, made a $162,-000 second deed of trust note payable to the Estate; and the Probate Estate transferred $157,500 of that note to Donald, "[i]n return for [which she] gave up her claim to an interest in" the real estate.[6] Under the 1975 Settlement Agreement, Clarke transferred directly to Donald corporate debentures of Clarke totaling $175,-000, plus cash of approximately $20,000.

Clarke contends that "Donald gave up nothing" in return for these two transfers from Clarke, because "[n]either purported claim was against L.A. Clarke."[7] Moreover, Clarke contends that "neither claim was genuine and the recital of them ... was a sham."[8] Solely for purposes of her motion for summary judgment, Donald does not dispute these contentions.

The $162,000 second deed of trust was recorded on October 14, 1975 among the land records of Fairfax County, and the Settlement Agreement was filed in the Probate Court proceedings of the Estate in the District of Columbia on July 21, 1976 (No. 287-72).

"Pursuant to a [second] Settlement Agreement dated May 13, 1980, Mrs. Donald refinanced the $175,000 debentures and $162,000 secured note ...", receiving in exchange for them two unsecured notes of Clarke totaling approximately $190,000 plus a $250,000 note of Newton Asphalt Co., which purchased the two quarries from Clarke.[9] Donald contends that "[t]he 1980 notes were a dollar for dollar exchange for the 1975 notes ...",[10] taking into account payments made, interest accrued, and the lower interest rate on the new Newton note as compared to the interest rates on the prior 1975 obligations. Clarke disputes this contention and, citing Bankruptcy Rule 7056 and Fed.R.Civ.P. 56(f), states that additional discovery is needed and hence the Court should defer ruling.

3. *Rejection of various contentions by Clarke in opposition to Donald's motion.*

Clarke contends that Donald's attorney, John Davis, "orchestrated the scheme [for a "voluntary" and fraudulent conveyance [11]] in 1975" and "continued his scheme until Debtor's new owners took over on May 2, 1980."[12]

In addition, Clarke contends that the alleged fraud was not discovered or reasonably discoverable until creditors' "interests were represented by the Debtor acting as trustee in the bankruptcy proceeding."[13] Attached as Exhibit 3 to Clarke's Brief is an affidavit of Clarke's current president stating: "I did not become aware that Debtor had voluntarily and fraudulently conveyed notes to Constance Donald ... until June 25, 1982" (¶ 2, p. 1); and until then "I had no knowledge which could have given me reason" to sue (¶ 3, p. 2).

Donald correctly points out, and Clarke does not dispute, that the date when Clarke's current management discovered or should have discovered the pertinent facts is irrelevant. A corporation is bound by the knowledge of its owners and managers as of the date of the transaction at issue. The fact that new owners and managers

---

6. L.A. Clarke & Son, Inc.'s Answers to Constance Donald Interrogatories ("Clarke's Answers"), filed December 21, 1984, p. 4; Donald's Brief in Support of Motion for Summary Judgment ("Donald's Brief"), p. 4.

7. Clarke's Answers, pp. 4-5.

8. Clarke's Answers, p. 5.

9. Clarke's Answers, pp. 5-6.

10. Response to Plaintiff's Brief Opposing Defendant Donald's Motion for Summary Judgment ("Donald's Responses"), p. 2.

11. A "voluntary conveyance" is one "not upon consideration deemed valuable in law." Virginia Code, § 55-81.

12. Plaintiff's Brief Opposing Defendant Donald's Motion for Summary Judgment ("Clarke's Brief"), filed September 24, 1984, p. 10.

13. Clarke's Brief, p. 9.

have taken over does not erase the *corporation's* knowledge acquired through its former personnel. Thus, here, the Debtor corporation cannot and does not seek to recover in its own right.

Rather, under § 544(b), the Debtor-in-possession stands in the shoes of "an actual unsecured creditor or the successor in interest of an actual unsecured creditor against whom the transfer was ... voidable under the controlling state ... law." [14] Thus, in order to prevail, there must be at least one unsecured creditor of Clarke whose claim was not barred by limitations or laches on March 11, 1983, the date Clarke filed its bankruptcy petition.[15]

This Court rejects Clarke's contention that, unless the 1980 transfer was precisely "dollar for dollar" for what was then due under the 1975 transfer, the starting date for computation of any limitations period should be in 1980. It is undisputed that the notes which Donald held as a result of the 1975 transfer had not been completely paid off at the time of the 1980 exchange. Hence, the 1980 transfer was not "voluntary"; there was not in 1980 a complete lack of "consideration deemed valuable in law," within the meaning of Va.Code § 55-81. Any transfer that lacked consideration occurred in 1975; by 1980 the notes which Donald had obtained in 1975 stood as consideration for the new notes she acquired in 1980. The lack of consideration, if any, occurred in 1975, not in 1980. Moreover, the 1980 transfer would be voidable as fraudulent under § 55-80 for inadequacy of consideration alone only if the inadequacy were "so gross as to shock the conscience ..." *Flook v. Armentrout's Admr.*, 100 Va. 638, 42 S.E. 686, 688 (1902). Absence of a dollar-for-dollar exchange is a far cry from gross, shock-the-conscience inadequacy.

This Court also rejects Clarke's contention that there was a continuing wrong because Donald's attorney "orchestrated the scheme in 1975" and "continued his scheme until ... 1980." [16] Clarke has cited two cases, but they both have to do with the "continuing treatment" rule in medical malpractice cases. That rule is based on the theory that "the duty with reference to an accurate diagnosis persisted throughout the entire treatment because upon each diagnosis rested the correctness of any future conduct ..." *Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594, 599 (1979), followed in *Fenton v. Danaceau*, 220 Va. 1, 255 S.E.2d 349 (1979). The court in *Farley* pointed out the distinction between that situation and cases in which the plaintiff's claim "stemmed from a single, isolated, non-continuing wrongful act." 252 S.E.2d at 599.

Here, the only "continuing wrong" alleged by Clarke is the failure to undo in 1980 (or at any time subsequent to 1975) that which had been done and completed in 1975.[17] That is simply not a continuing wrong, either within the meaning of the two cases cited or by any reasonable analogy to or extension of the continuing treatment rule as enunciated in *Farley*.

In addition, this Court rejects Clarke's contentions that its "causes of action arose anew as each payment was made" and that "the 1980 transaction caused the limitations period on the 1975 debt to begin running anew because "acknowledgement of a prior promise to pay revives the promise to pay ..." [18] Payment, or a new promise to pay, demonstrates recognition of the validity and enforceability of the prior promise. Clarke seeks to turn the "payment" and "acknowledgement" rules on their heads; the payments, and the 1980 "acknowledge-

---

**14.** 4 Collier on Bankruptcy, ¶ 544.03[1], p. 544-20 (15th ed.).

**15.** 4 Collier on Bankruptcy, ¶ 544.03[2], p. 544-22.

**16.** Clarke's Brief, p. 10.

**17.** Clarke also says the attorney breached fiduciary duties because he "continued to wear more

hats than a man should wear ..." But the attorney's multiple capacities existed on the date of the 1975 transfers. Those transfers were completed in 1975. The attorney's activities after that period are irrelevant.

**18.** Clarke's Brief, pp. 10-11.

ment" of the 1975 promises, tend to show that the 1975 promises were valid and binding—not, as Clarke would have it, that they were invalid.

Finally, this Court rejects Clarke's contention that the 15-year limitations period applicable to suits for recovery of land against parties in adverse possession [19] has anything at all to do with this case. Clarke is not suing for recovery of land; Clarke does not allege that Donald is in possession of Clarke's land.

### 4. *The limitation period applicable to a "voluntary" conveyance.*

The parties have focused their attention primarily upon two limitations statutes. The first is Va.Code § 8.01–253.[20] Under § 8.01–253, the limitations period for a "voluntary" conveyance (*i.e.*, a conveyance "not upon consideration deemed valuable in law") is "five years from its recordation, and if not so recorded ... five years from the time the same was or should have been discovered ..." Here, the deed of trust from Clarke to the Probate Estate was recorded on October 14, 1975. But that deed of trust, as recorded, reveals only the sale from the Probate Estate to Clarke and the $162,000 "deferred purchase money" second trust back to the Probate Estate as seller; it does not reveal the transfer from the Probate Estate to Donald.[21] Nor, of course, does the recorded second deed of trust reveal any of the other 1975 transfers to Donald. The 1975 Settlement Agreement, filed in Probate Court in the District of Columbia on July 21, 1976, does reveal all of the transfers to Donald, including transfers of $157,500 "in principal amount of second trust notes issued by L.A. Clarke

...", and including the transfers of debentures and cash directly from Clarke to Donald.[22] The probate filing, however, hardly constitutes "recordation" within the meaning of Virginia Code § 8.01–253. Recordation of an interest in land means recordation among the land records of the locality where the land is located—not filing of another type of public record in another locality.

■ Therefore, the question under § 8.01–253 is: Is there at least one of Clarke's March 11, 1983 unsecured creditors whose claim against Clarke first arose on or before September 29, 1975 (the date of the 1975 transfers to Donald) and who did not and should not be expected to have discovered, on or before March 11, 1978 (*i.e.*, five years before Clarke filed its bankruptcy petition), any basis for a "voluntary-conveyance" claim against Donald?

"[T]he burden is on the plaintiff to prove that he acted with due diligence and yet did not discover the fraud ..." (or, here, the lack of consideration). *Hughes v. Foley*, 203 Va. 904, 128 S.E.2d 261, 263 (1962). And: "where the evidence is such that the Court could only permit the issue of due diligence to be resolved by a jury in one way, summary judgment may be appropriate." *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242, 243 (D.C.D.C.1975). But: "[w]hen conflicting inferences can be drawn from the facts, the question of when the fraud [or, here, the lack of consideration] should have been discovered must be submitted to" the trier of fact. *Newman v. Prior*, 518 F.2d 97, 100 (4th Cir.1975).

Here, it is not at all clear from the record of this adversary proceeding that Clarke

19. Va.Code § 8.01–236.

20. The full text of § 8.01–253 is:
    No gift, conveyance, assignment, transfer, or charge, which is not on consideration deemed valuable in law, or which is upon consideration of marriage, shall be avoided in whole or in part for that cause only, unless within five years from its recordation, and if not so recorded within five years from the time the same was or should have been discovered, suit be brought for that purpose, or the subject thereof, or some

part of it, be distrained or levied on by or at the suit of a creditor, as to whom such gift, conveyance, assignment, transfer or charge, is declared to be void by § 55–81.

21. See deed of trust attached to Affidavit of Constance Donald ("Donald Affidavit"), filed September 13, 1984, and referred to in paragraph 8 of the Donald Affidavit.

22. Donald Affidavit, ¶ 5, and attached 1975 Settlement Agreement.

has any March 11, 1983 unsecured creditor whose claim arose prior to September 29, 1975.[23] If there is no such creditor, then Donald will be entitled to judgment for that reason on Clarke's claims under § 55–81. If there are any such creditors, then further factual inquiry will be needed to determine the "due diligence" issue as to each of them.

Therefore, summary judgment will be denied at this time as to Clarke's claims under § 55–81, but without prejudice to renewal if it appears without genuine dispute that Clarke had on March 11, 1983 no unsecured creditor whose claim first arose prior to September 29, 1975, or if it appears without genuine dispute that all such creditors, by March 11, 1978, either knew or by the exercise of due diligence should have known facts constituting a basis for a "voluntary conveyance" claim against Donald.

### 5. *The limitation period applicable to a fraudulent conveyance.*

■ Donald asserts that the limitation period applicable to a fraudulent conveyance under § 55–80 is the one-year period prescribed by § 8.01–248[24] for "[e]very personal action, for which no limitation is otherwise prescribed," as modified by § 8.01–249(1),[25] specifying that the cause of action in actions for fraud "shall be deemed to accrue ... when such fraud ... is discovered or by the exercise of due diligence should have been discovered."

Clarke points to the line of cases stating that "[u]nder Virginia law, a fraudulent conveyance has no specific statute of limitation. Rather, as a suit in equity a fraudulent conveyance is governed by the con-

cept of laches." *In re Porter,* 37 B.R. 56, 66 (Bankr.E.D.Va.1984). Clarke continues: a fraudulent-conveyance suit "must be brought without unreasonable delay after the fraud is discovered or should have been discovered"—citing 9A *Michie's Jurisprudence of Virginia and West Virginia* (Fraudulent and Voluntary Conveyances) § 81 (1977); *Atkinson v. Solenberger,* 112 Va. 667, 72 S.E. 727, 728 (1911); and *Welsh v. Solenberger,* 85 Va. 441, 8 S.E. 91, 93 (1888).

Notwithstanding these authorities, there is no reason to doubt that Virginia follows the general rule that "[w]here [as here] there is a corresponding legal right or remedy ... courts of equity ordinarily will apply the statute of limitations [either] by analogy ..." or else "with equal force as at law ..." 30A C.J.S. *Equity,* § 131 (1965), pp. 90–94. Indeed, it appears that the Virginia legislature enacted the "discovery" rule of § 8.01–249(1)'s predecessor in order to "[c]odify ... the chancery rule ... [and] extend ... the equitable exceptions [to time-barring of claims] to cases at law ..." *Excalibur Insurance Co. v. Speller,* 220 Va. 304, 257 S.E.2d 848, 850 (1979).

Thus, in the absence of a strong (or any) showing by Clarke that a longer period should be allowed than one year after fraud was discovered or should have been discovered, this Court will apply the one-year period. The question then becomes: Is there at least one of Clarke's March 11, 1983 unsecured creditors that did not and should not be expected to have discovered, on or before March 11, 1982, any basis for

**23.** In answer to Donald's interrogatory asking this question, Clarke responded that it would "make its records available." Clarke's Answers, No. 2. In answer to Donald's similar interrogatory concerning claims that arose on or before May 13, 1980, Clarke attached a list of 26 creditors. Only two of those are listed as "pre-1979," and the answer does not reveal how long before 1979 those two claims arose.

**24.** The full text of § 8.01–248 is:

Every personal action, for which no limitation is otherwise prescribed, shall be brought

within one year after the right to bring such action has accrued.

**25.** The full text of § 8.01–249(1) is:

The cause of action in the actions herein listed shall be deemed to accrue as follows:

1. In actions for fraud, or mistake, and in actions for rescission of contract for undue influence, when such fraud, mistake, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered;

\*   \*   \*   \*   \*   \*

a fraudulent-conveyance claim against Donald?

The Court notes that, in answer to Donald's request to state the factual basis for the claim of "intent to delay, hinder or defraud creditors," Clarke avers, *inter alia:* [26] "In return for the $175,000 L.A. Clarke corporate debentures [which she received in 1975] Mrs. Donald gave up nothing. The debentures ... are not recited as consideration in the Sales Agreement. The Settlement Agreement recites two other claims Mrs. Donald purported to assert against the [Probate] Estate ... * * * * Neither purported claim was against L.A. Clarke. Neither could properly be satisfied by L.A. Clarke." The Settlement Agreement became a matter of public record on July 21, 1976. According to Clarke's averments, that Agreement shows on its face that Clarke received nothing in exchange for its $175,000 debentures. This Court believes that Clarke faces a heavy burden indeed to establish that it has at least one unsecured creditor that could not with reasonable diligence have discovered, by March 11, 1982, what appeared on the public record of the probate court proceedings of Clarke's former principal owner as early as July 21, 1976.[27] Clarke must also prove by "clear, cogent and convincing" evidence [28] sufficient "badges of fraud" [29] to establish the requisite intent and effect.[30]

Nevertheless, this Court is not prepared at this time to grant summary judgment to Donald as to the fraudulent-conveyance claims. The record of this adversary proceeding is simply too sparse, now, for this Court to make the determination that there is not one of Clarke's March 11, 1983 unsecured creditors (with standing to raise the issue) that was unable with reasonable diligence to discover, by March 11, 1982, some basis for a fraudulent-conveyance claim against Donald.

6. *Defensive use of Clarke's claims, to defeat Donald's claim against Clarke.*

Finally, Clarke points out that Donald has filed a $219,353.04 claim against Clarke in this case, based on two promissory notes given as part of the 1980 refinancing of the 1975 transaction. Hence, says Clarke:

**26.** Clarke's Answer No. 6.

**27.** It is true that Clarke's fraudulent-conveyance claims against Donald also rest on other factual averments, *e.g.,* that Donald's purported claims against the Probate Estate were not genuine "and the recital of them in the Settlement Agreement was a sham." Clarke's Answer, p. 5. But "the statute of limitations is not tolled whenever a defendant has concealed facts material to *any* legal issue of significance in a case," but "only when concealment has so impaired the plaintiff's case that he is not able to survive a threshold motion to dismiss ..." *Hohri v. United States,* 782 F.2d 227, 249, footnote 57 (D.C.Cir. 1986). There is no reason why this aspect of the "due diligence" rule should not apply equally in fraudulent-conveyance as in fraudulent-concealment cases.

**28.** *Colonial Inv. Co. v. Cherrydale Cement Block Co.,* 194 Va. 454, 73 S.E.2d 419 (1952); *McClintosh v. Royall,* 173 Va. 408, 4 S.E.2d 369 (1939); *Hutcheson v. Savings Bank of Richmond,* 129 Va. 281, 105 S.E. 677 (1921).

**29.** The badges of fraud include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor, and (6) fraudulent incurrence of indebtedness after the conveyance. *In re Porter,* 37 B.R. 56, 63 (Bankr.E.D.Va.1984) (citing *Hutcheson v. Sav. Bank of Richmond, supra,* n. 28). Due to the difficulty in establishing "actual intent," evidence of fraud may be, and generally must be, shown by circumstantial evidence from which courts infer the fraudulent intent. *In re Decker,* 295 F.Supp. 501 (W.D.Va. 1969), *aff'd. sub nom. Woodson v. Gilmer,* 420 F.2d 378 (4th Cir.1970).

**30.** Apparently, though, Clarke need not prove that its creditor's claim arose on or before September 29, 1975. For it appears that, under Va.Code § 55–80 and its predecessors, fraudulent conveyances are void both as to existing and as to subsequent creditors. *Battle v. Rock,* 144 Va. 1, 131 S.E. 344 (1926); *Consolidated Tramway Co. v. Germania Bank,* 121 Va. 331, 93 S.E. 572 (1917). However, neither party has addressed the issue of precisely what is needed in order to confer standing upon a subsequent creditor to challenge the validity of a prior conveyance on fraudulent-conveyance grounds, and the Court makes no decision in that regard.

"Her claim permits Debtor to raise all defenses to these notes regardless of statutes of limitations." [31] Clarke cites *In re T.E. Mercer Trucking Co.,* 16 B.R. 176, 188 (Bankr.N.D.Tex.1981); *Rector v. Hancock,* 127 Va. 101, 102 S.E. 663, 667–668 (1920); and 51 Am.Jur. *Limitation of Actions* § 76.

Those citations do indeed stand for the general rule that "the statute of limitations is not applicable to matters set up strictly by way of defense." [32] However, that general rule is subject to the exception that assertion of a separate claim for an independent wrong can be time-barred.[33] Here, Donald argues, Donald's claim is against Clarke individually whereas the claims that Clarke asserts against Donald are really claims of Clarke's creditors; Clarke is suing not in its own right but as representative standing in the shoes of those creditors. In its own individual behalf Clarke has no claim against Donald, because of the rule, followed in Virginia and elsewhere, that as between the parties a fraudulent or a "voluntary" conveyance is valid and not subject to avoidance. *Catron v. Bostic,* 123 Va. 355, 96 S.E. 845 (1918).

In view of the fact that this Court is denying summary judgment altogether at this time for the reasons set forth in the preceding two sections of this opinion, the Court need not and will not now address these conflicting contentions.

NOW THEREFORE IT IS ORDERED that defendant Constance Donald's motion for summary judgment is DENIED.

---

**31.** Count 5 of Clarke's complaint demands equitable subordination of Donald's claim against Clarke, pursuant to 11 U.S.C. § 510(c).

**32.** *In re T.E. Mercer Trucking Co.,* 16 B.R. at 188.

**33.** *Basham v. Finance America Corp.,* 583 F.2d 918, 927–928 (7th Cir.1978).