**In re Juan LAINES, Debtor.**

**H. Jason Gold, Trustee, Complainant,**

**v.**

**Juan Laines, et als., Respondents.**

**Bankruptcy No. 04–10020–RGM.
Adversary No. 04–1052.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 18, 2005.

See also 352 B.R. 410, 2005 WL 4692674 and 352 B.R. 416, 2006 WL 2501455.

Charles G. Preston, Great Falls, VA, for Debtor.

Joel S. Aronson, Ridberg Sherbill & Aronson LLP, Bethesda, MD, for Trustee, Complainant.

### *MEMORANDUM OPINION*

ROBERT G. MAYER, Bankruptcy Judge.

The chapter 7 trustee seeks to avoid transfers of two properties, the debtor's home and a rental townhouse, as voluntary and fraudulent conveyances under the Virginia Code and the Bankruptcy Code, and to deny the debtor a discharge for having fraudulently transferred property within one year prior to the filing of this case.

### I. Background

The facts relating to the transfers are not contested. The debtor bought his home on November 28, 2000. He was unmarried at the time and took title solely in his name. Fifteen weeks later, on March 15, 2001, he married Ana E. Laines. Three days later, he transferred his home to his bride and himself as tenants by the entirety with the common-law right of survivorship. The deed was recorded on March 22, 2001.[1] It was captioned "Deed of Gift" and recited that the conveyance was "for estate planning purposes and for no monetary consideration." It was exempt from recordation taxes under Va. Code (1950) §§ 58.1–810(3) and 58.1–811(D).[2] The debtor and his wife conveyed the home to Fidel Rovira and Ana E. Laines, the debtor's wife, by a deed recorded on October 10, 2003. They hold the home as joint tenants with the common-law right of survivorship.[3] This deed was also captioned "Deed of Gift" and also recited that the conveyance was "for estate planning purposes and for no monetary consideration." It was exempt from recordation taxes under Va.Code (1950) § 58.1–811(D).

---

1. All transfer dates are the date of recordation of the deed.

2. Section 58.1–810(3) provides that a recordation tax shall not be required for admitting to record a deed "to which a husband and wife are the only parties." Section 58.1–811(D) states:

 No recordation tax shall be required for the recordation of any deed of gift between a grantor or grantors and a grantee or grantees when no consideration has passed between the parties. Such deed shall state therein that it is a deed of gift.

3. The deed purports to convey the property to Rovira and Laines' wife as tenants by the entirety with the common-law right of survivorship. This estate is not available to them because they were not husband and wife. They hold the property as joint tenants with the common-law right of survivorship. *Funches v. Funches*, 243 Va. 26, 413 S.E.2d 44 (1992); *Gant v. Gant*, 237 Va. 588, 379 S.E.2d 331 (1989).

The townhouse was also owned solely by the debtor prior to his marriage. He purchased it on December 9, 1998. On March 26, 2001, he conveyed it to himself and his bride, Ana E. Laines, as tenants by the entirety. There was also a second transfer of this property. By a deed recorded on December 26, 2002, the debtor and his wife conveyed the townhouse to themselves and Miguel A. Perez as tenants in common.[4] This deed was also captioned "Deed of Gift," recited that it was made for "no monetary consideration," and was exempt from recordation taxes under Va.Code (1950) § 58.1–811(D).

4. There was no attempt to create any survivorship rights among the parties. See Va.Code (1950) § 55–20.1 and In re Sampath, 314 B.R. 73 (Bankr.E.D.Va.2004) (survivorship expressly provided among three grantees two of whom were husband and wife).

5. Va.Code (1950) § 8.01–253 establishes a five-year statute of limitation for actions under Va.Code (1950) § 55–81. There is no statute of limitations for an action under Va. Code (1950) § 55–80 although the doctrine of laches is applicable. Flook v. Armentrout's Adm'r, 100 Va. 638, 639, 42 S.E. 686, 687 (1902); In re Massey, 225 B.R. 887, 890 (Bankr.E.D.Va.1998); Hyman v. Porter (In re Porter), 37 B.R. 56, 66 (Bankr.E.D.Va.1984). The Bankruptcy Code extends the limitations period, but establishes a bar date by which a trustee must commence an action. See 11 U.S.C. §§ 108 and 546, respectively.

6. The March 22, 2001 transfer of the home, the March 26, 2001 transfer of the townhouse and the December 26, 2002 transfer of the townhouse are not avoidable as voluntary conveyances under Bankruptcy Code § 548(a)(1)(B) or Va.Code (1950) § 55–81. The Bankruptcy Code and the Virginia Code require insolvency on the date of the transfer. There was no evidence of the debtor's solvency or insolvency on March 22, 2001, March 26, 2001, or December 26, 2002. Insolvency determined as of one date may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates. In re Fox

The debtor filed his petition in bankruptcy on January 2, 2004.[5] The trustee asserts that all four transfers are avoidable as both fraudulent conveyances and voluntary conveyances under both the Virginia Code and the Bankruptcy Code, Va.Code (1950) §§ 55–80 and–81 and 11 U.S.C. §§ 548(a)(1)(A) and (B), the state law remedies being available by virtue of 11 U.S.C. § 544(b). There are a total of four transfers, each potentially avoidable under four statutes, for a total of 16 separate analyses. However, only the March, 2001 transfers of the home and the townhouse need to be analyzed under Va.Code (1950) § 55–80.[6]

Bean Co., Inc., 287 B.R. 270, 282 (Bankr.D.Idaho 2002) (three months); In re Washington Bancorporation, 180 B.R. 330, 334 (Bankr.D.D.C., 1995) (applying retrojection); Mancuso v. T. Ishida USA, Inc. (In re Sullivan ), 161 B.R. 776, 783 (Bankr.N.D.Tex. 1993) (six months before and six months after); In re Ohio Corrugating Co., 91 B.R. 430, 437 (Bankr.N.D.Ohio, 1988) (16 days); In re Uhlmeyer, 67 B.R. 977, 980 (Bankr.D.Ariz. 1986) (two months). But see In re War Eagle Floats, Inc., 104 B.R. 398, 400 (Bankr. E.D.Okla.1989) (six months is too long). The time periods between the transfers and the January 4, 2004 schedules and statement of affairs are too long to permit using the schedules and statements of affairs as the basis for an inference of insolvency at the earlier transfer dates and there is no evidence as to the presence or absence of other transactions during those periods that could affect the debtor's solvency. Additionally, none of the three transfers was within the one-year period preceding the filing of the petition and, thus, none may be avoided under the Bankruptcy Code in any event.

Insolvency was shown for the October 10, 2003 transfer of the home. Insolvency on October 10, 2003, is properly inferred backwards from the debtor's January 4, 2004 schedules and statement of financial affairs— the schedules showing the debtor's insolvency on January 4, 2004, and the statement of affairs showing the absence of any transaction between October 10, 2003, and January 4, 2004, that would affect the debtor's solvency. However, the transfer cannot be avoided at

## II. Avoidance of the March, 2001 Transfers

The trustee may avoid the March 22, 2001 transfer of the house and the March 26, 2001 transfer of the townhouse as fraudulent conveyances under the Virginia fraudulent conveyance statute, Va.Code (1950) § 55–80, which states:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of the purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Va.Code (1950) § 55–80.

It is not often possible to prove an intent to hinder, delay or defraud directly. It is usually proven with circumstantial evidence. Under Virginia law, certain evidence has become badges of fraud. *Hutcheson v. Savings Bank of Richmond,* 129 Va. 281, 284, 105 S.E. 677, 680 (1921); *Young v. Willis,* 82 Va. 291 (1886). Establishing badges of fraud creates a prima facie case that must be rebutted by the party seeking to uphold the transfer. *Hutcheson v. Savings Bank,* 129 Va. at 284, 105 S.E. at 681. Every badge of fraud does not need to be present in order to find of an intent to hinder, delay or defraud.

There are various expressions of the badges of fraud. The one given in *Hutcheson v. Savings Bank,* 129 Va. at 281, 105 S.E. at 681 quoting *Hickman's Ex'r v. Trout,* 83 Va. 478, 3 S.E. 131 (1887) is:

> The usual badges of fraud are: Gross inadequacy of price; no security taken for the purchase money; unusual length of credit; bonds taken at long periods; conveyance in payment of alleged antecedent indebtedness of father to son residing together.

*Hyman v. Porter (In re Porter),* 37 B.R. 56, 63 (Bankr.E.D.Va.1984) also summarizes them:

> The badges of fraud have been stated to include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditor at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by the transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

A familial relationship between the parties to the transaction is not itself a badge of fraud. *Hutcheson v. Savings Bank, supra; Johnson v. Lucas,* 103 Va.

---

state law because the property was exempt as tenants by the entirety property before the transfer. *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963); *Vasilion v. Vasilion,* 192 Va. 735, 743, 66 S.E.2d 599, 604 (1951). That restriction does not apply to Bankruptcy Code § 548(a)(1)(B) and, thus, the October 10, 2003 transfer could be avoided under Bankruptcy Code § 548(a)(1)(B). *Tavenner v.*

*Smoot (In re Smoot)* 257 F.3d 401 (4th Cir. 2001). Avoiding the transfer only puts the property back in the debtor and his wife as tenants by the entirety. Without further relief, the trustee could administer the home only for the benefit of joint creditors. *Bunker v. Peyton (In re Bunker),* 312 F.3d 145 (4th Cir.2002). There do not appear to be any joint creditors in this case.

36, 48 S.E. 497 (1904). It may, however, strengthen the presumption that arises from other circumstances. *Johnson v. Lucas,* 103 Va. at 40–41, 48 S.E. at 498. Where the husband is not indebted at the time of a transfer to his wife, there is no presumption of fraudulent intent and the burden is on the creditor to show that a prospective fraud was intended. *Witz, Biedler & Co. v. Osburn,* 83 Va. 227, 2 S.E. 33 (1887); *Hutchison v. Kelly,* 40 Va. (1 Rob.) 123 (1842). However, a transaction between parties related by blood or affinity "will be more closely scrutinized." *Johnson v. Lucas,* 103 Va. at 41, 48 S.E. at 498. Transactions between husband and wife must be closely scrutinized to assure that they are fair and honest and not merely contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors. In such a contest, the burden of proof is on the transferee to show the bona fides of the transaction. *Morrisette v. Cook & Bernheimer Co.,* 122 Va. 588, 95 S.E. 449 (1918); *Richardson v. Pierce,* 105 Va. 628, 54 S.E. 480 (1906).

The trustee points to multiple badges of fraud. The transfers were to the debtor's wife and himself as tenants by the entirety. The debtor retained an interest in the transferred properties and possession of them. There was no consideration. They were made when his start-up venture, a telecommunications company, was heavily in debt to St. Anna's Home, a debt he had guaranteed.

The debtor testified that he wanted to provide for his family in case he were to die.[7] There is nothing wrong, in and of itself, in transferring pre-marital real property owned by the husband to the husband and wife as tenants by the entire-ty upon marriage. It is a substitute for a will and has other advantages that a will cannot provide such as the necessity for both husband and wife to execute any deed conveying or encumbering the property. It is a very common manner in which property is held by a married couple. However, a transaction between husband and wife must be closely scrutinized. In this case, the debtor had a significant obligation outstanding to St. Anna's Home at the time of the transaction. He had just "walked away" from a telecommunications start-up company he had organized. He did not leave with a work-out plan and made no effort to wind-up the company or pay the underlying debt. He seemingly did not part on favorable terms with St. Anna's Home. While he testified that there should have been sufficient assets to pay the obligation and to avoid a demand on his guarantee, he did not know how the assets were eventually used or liquidated and, at the time he walked away, had no assurance of how they would be used or liquidated. He faced a potentially overwhelming obligation. At this time, a time when his assets were at risk, he sought to place his home and his townhouse beyond the reach of his creditors.

Having proven these facts, the burden shifted to the wife to come forward and show that the transactions were bona fides and were not mere contrivances to place the debtor's property beyond the reach of his creditors. *Richardson v. Pierce,* 105 Va. at 629, 54 S.E. at 481. She did not testify. The debtor testified and the depositions of the other two transferees were admitted into evidence. There was no testimony of any financial negotiations concerning the transfer: the value of the two properties, the debts encumbering them,

---

7. Schedule I lists his age as of January 4, 2004, as 36 years. There was no testimony of any health related difficulties. Moreover, the relationship with his wife was of long standing. They have known each other since 1985 and worked together since 1996.

the consideration to be paid or the terms of payment. There was no evidence supporting the assertion that the transfers were part of an estate plan, other than to provide a will substitute. There was no evidence showing that the likelihood of the debtor being called upon to honor his guarantee was remote. There was no evidence that he could have honored his guarantee if called upon to do so. There was no evidence showing that the debtor had any immediate prospects to establish regular income sufficient to meet his financial obligations as they became due. There was no other evidence showing the bona fides of the transactions.

The trustee presented sufficient evidence to require the wife to go forward to prove that the transactions were fair and honest. She did not meet her burden. The debtor's actions in the absence of satisfactory evidence of the bona fide nature of the transactions reflect that the transactions were not undertaken for the stated reasons, but were undertaken with the intent to hinder, delay or defraud his creditors. They will be avoided under Va.Code (1950) § 55–80.[8]

### III. Recovery of the Properties

■ Simply avoiding the transfers does not complete the trustee's task. He must recover the properties. Recovery is achieved by § 550 of the Bankruptcy Code which "enunciates the separation between

8. Avoidance under 11 U.S.C. § 548(a)(1)(A) is not available as to these two transfers because they were more than a year before the filing of the petition.

9. To the extent that the debtor acquired new interests in the properties when the tenancies by the entirety were created, he is an initial transferee along with his wife. One might be tempted to argue that he retained a one-half-interest and transferred the other one-half interest to his wife. This argument is inconsistent with the creation of a tenancy by the entirety estate and the required unities of title.

the concepts of avoiding a transfer and recovering from the transferee." H.R. 95–595, 95th Cong., 1st Sess. 375 (1977) *reprinted in* C Collier on Bankruptcy, Part 4(d)(i). *See also* S.Rep. 95–989, 95th Cong. 2nd Sess. 90 (1978) *reprinted in* D Collier on Bankruptcy, Part 4(e)(i). Section 550(a) permits the trustee to recover from all transferees. Section 550(a) classifies transferees as initial transferees and as immediate and mediate transferees of the initial transferee. Section § 550(b) protects immediate and mediate transferees but not initial transferees by limiting the trustee's right of recovery against them. *In re Fox Bean Co., Inc.,* 287 B.R. 270, 283 (Bankr.D.Idaho 2002). A trustee may not recover from "an [immediate or mediate transferee of an initial transferee] that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." Bankruptcy Code, § 550(b)(1).

### A. Recovery from the Initial Transferees

■ The debtor and Ana Laines are the initial transferees of both March 2001 transfers of the home and the townhouse.[9] The two properties may be recovered from them as the initial transferees under § 550(a)(1). Section 550(b) imposes no restriction on the trustee's ability to recover

*See In re Cordova,* 73 F.3d 38, 42–43 (4th Cir.1996) (applying § 541(a)(5)(B) to tenancy by the entirety property converted to tenancy in common upon divorce within 180 days after filing petition in bankruptcy); *Norman v. Cunningham,* 46 Va. (5 Gratt.) 63 (1848) (wife obtained her one-half interest before marriage; husband obtained the other one-half *interest after their marriage; property was* held as tenants in common). It makes no difference in this case. As an initial transferee he has none of the protections of 11 U.S.C. § 550(b).

from an initial transferee and offers no protection to an initial transferee. *Helms v. Roti (In re Roti* ), 271 B.R. 281 (Bankr. N.D.Ill.2002); *Bucki v. Singleton (In re Cardon Realty Corp.*), 146 B.R. 72, 79 n. 11 (Bankr.W.D.N.Y.1992) (initial transferee may not utilize good faith defense).

### B. Recovery from the Immediate Transferees

The debtor and his wife conveyed the home to Fidel Rovira and Ana E. Laines, the debtor's wife, by a deed recorded on October 10, 2003, and the townhouse to themselves and Miguel A. Perez by a deed recorded on December 26, 2002. Rovira is the immediate transferee of the home and Perez, the immediate transferee of the townhouse.[10]

■■■ The trustee may not recover against Rovira or Perez if they took their interest (1) for value, (2) in good faith and (3) without knowledge of the voidability of the transfers. The three tests are stated in the conjunctive, thus all three elements must be present to entitle them to the protection of § 550(b).

■■■ Good faith is used throughout the Bankruptcy Code but is not defined. The Bankruptcy Code does not define good faith. Good faith is not susceptible of precise definition and is determined on a case-by-case basis. *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir.1983). To determine whether a transferee acts in good faith, "courts look to what the transferee objectively 'knew or should have known' " instead of examining the transferee's actual knowledge from a subjective standpoint. *In re Agricultur-*

*al Research & Technology Group, Inc.*, 916 F.2d 528, 535–36 (9th Cir.1990); *cf. Bonded Fin. Servs. v. European Am. Bank,* 838 F.2d 890, 897–98 (7th Cir. 1988) (analyzing good faith under § 550(b)). In other words, a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency. *In re Anchorage Marina, Inc.,* 93 B.R. 686, 693 (Bankr.D.N.D. 1988); *see also 4 Collier,* at 548–72 to–73. In a related context to determine whether good faith exists, the court looks to whether "the transaction carries the earmarks of an arms-length bargain." *In re Robbins,* 91 B.R. 879, 886 (Bankr.W.D.Mo.1988) (internal quotation and citations omitted) (analyzing good faith under § 549(c)).

*Brown v. Third Nat'l Bank (In re Sherman* ), 67 F.3d 1348, 1355 (8th Cir.1995) (discussing good faith under § 548(c)). *See Huffman v. Commerce Security Corporation,* 845 F.2d 1254, 1258 (4th Cir. 1988) ("wilful ignorance in the face of facts which cried out for investigation may not support a finding of good faith").

*Sherman* illustrates the good faith requirement. The debtor's parents were the target of the fraudulent conveyance action. They knew of the debtor's illness, extensive medical debts, an impending lawsuit, mortgage defaults and threatened foreclosures. "[T]he combination of these factors places the [parents] on inquiry notice of the debtors' insolvency. Thus, [they] did not take . . . in good faith." *Id.* at 1355–56. There were other factors supporting this conclusion. The transactions did not

**10.** Mr. and Mrs. Laines are not transferees to the extent that they merely retained an interest in the properties. To the extent that Mrs. Laines acquired a new interest in the home when the tenancy by the entirety was conveyed to Rovira and her, she is also an immediate transferee. *See In re Cordova,* 73 F.3d 38, 42–43 (4th Cir.1996). She does not satisfy any of the three requirements in 11 U.S.C. § 550(b) and cannot avail herself of the protections of it.

"bear the earmarks of an arms-length transaction." *Id.* at 1356. The purchase price was the amount of the indebtedness, not the fair market value. The only information available to them concerning value was an old appraisal. The debtors received no consideration for their equity. The debtors did not negotiate the purchase price. The negotiations were between the parents and the bank threatening foreclosure. *Id.*

 Neither Rovira nor Perez took in good faith. They were both good friends of long standing. Rovira, the transferee of the house, and the debtor had known each other for 15 years. The debtor described their relationship in his deposition:

Q. Is he a relation, related to you in any way?

A. No. You know, normally we have, when somebody's really close to you, you wish that to be a permanent member of your family, so it's like, you sometimes say yeah, it's like my cousin or something, but there's no relation at all.

Q. Why is it that Mr. Rovira was put on to the deed for the Great Falls property?

A. My father, his father, I know him and then we love each other like family, and then I was telling you that I need someone to look after my family if something happened to me.

Exhibit 3, Deposition of Juan Laines at 49.

When asked why he entered into the transaction, Rovira stated:

A. Well, because I talked to Mrs. Anita [*sic*] so I know Juan having trouble. She said I need somebody to help with the house and everything, and I told her it's okay, for a while I move to the house.

Later in the deposition he was asked what would happen if the house were sold:

Q. If [the Laines] wanted to sell the house ... what would happen, would you get any money?

A. No.

Q. If they wanted to sell it, would you let them? Would it be okay with you if they sold the house?

A. Yeah, because I have to, I live, I have to for the babies, for Ana to pay the house. That's the only point.

Exhibit 5, Deposition of Fidel Rovira at 5, 8–9.

The deed was titled "Deed of Gift." There was no testimony of any money changing hands. There was no testimony of any discussions of the value of the properties or the liens against them. There was no discussion of any payment to the debtor and his wife for their equity. There was no written sales contract. There were no written promises to support the debtor's family, the duration of the support or the amount of the support. There was no explanation of how conveying the property to Rovira advanced any legitimate estate planning objective. Rovira did not expect to gain anything from the transaction. He was willing to sell the property at any time the Laines requested and to give them all of the proceeds from a sale. At the same time, Rovira knew of the debtor's financial condition.

Perez had known the debtor for 20 years. He knew the debtor from when they lived in El Salvador. The debtor described Perez as "a longtime friend of mine as well as [of] my father." Exhibit 3, Deposition of Juan Laines at 35. Perez knew that his friend was in financial difficulty and wanted to protect his wife and family. The transaction was not a typical transaction. There was no sales contract.

There was no evidence of negotiation of the sales price or of the adequacy of the sales price. There was no evidence that any money changed hands. The deed was denoted a "Deed of Gift" and recordation taxes which are not charged for recording a deed of gift were avoided. The transaction was not in any way a typical transaction and should have excited scrutiny of a prospective bona fide purchaser.

Neither Rovira nor Perez took in good faith. They had sufficient knowledge of the debtor's circumstances and the unusual nature of the transactions to put a reasonable person on notice and cause them to inquire further. *See also Bartl v. Garfinkel (In re Claxton)*, 30 B.R. 199, 212 (Bankr.E.D.Va.1983) (applying Virginia law); *Bank of Commerce v. Rosemary & Thyme, Inc.*, 218 Va. 781, 784, 239 S.E.2d 909, 912 (1978); *Crowder v. Crowder*, 125 Va. 80, 83, 99 S.E. 746, 748 (1919) ("knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor or seller"). Neither is protected by the defenses provided by § 550(b).[11] Consequently, the trustee may recover the house from Rovira and the townhouse from Perez under § 550(a).[12]

### IV. Denial of Discharge

The trustee also objected to granting the debtor a discharge on the ground that he made a transfer with the intent to hinder, delay or defraud the creditors of the estate within one year before the filing of the petition. 11 U.S.C. § 727(a)(2)(A). Finding that the March 2001 transfers were fraudulent is not determinative because they were more than one year before the filing of the petition. In fact, the only transaction within one year before the filing of the petition was the October 10, 2003 transfer of the home from the debtor and his wife as tenants by the entirety to his wife and Rovira as tenants in common.

Section 727(a)(2)(A) merely requires that the debtor transfer property with the intent to hinder, delay or defraud. It does not require that the transfer be necessary to effectuate the intent or that creditors in fact be hindered, delayed or defrauded. Only a transfer with the proscribed intent is necessary. *Tavenner v. Smoot (In re Smoot)*, 257 F.3d 401(4th Cir.2001). As in *Smoot*, immediately before the house was conveyed to Mrs. Laines and Rovira, it was exempt from the claims of the debtor's individual creditors because it was held as tenants by the entirety. If, however, as in *Smoot*, it was transferred with the proscribed intent, the debtor will be denied a discharge.[13]

---

**11.** It is not necessary to reach the issue of value because they did not take in good faith.

**12.** It is not necessary to independently avoid the October 10, 2003 transfer of the home or the December 26, 2002 transfer of the townhouse in order to recover the properties. The March 2001 transfers are avoided under 11 U.S.C. § 544(b) utilizing Va.Code (1950) § 55–80. The properties are recovered to the extent permitted by 11 U.S.C. § 550 from the initial transferees and all later immediate and mediate transferees. Subsequent transfers to the immediate and mediate transferees need not be fraudulent conveyances or voluntary conveyances. For example, in this case, the December 26, 2002 transfer of the townhouse is not avoidable. It occurred more than one year prior to the filing of the petition in this case and is, therefore, outside the parameters of § 548(a)(1)(A) and (B). It was a transfer of tenants by the entirety property and is protected from avoidance under Va.Code (1950) §§ 55–80 and–81 by *Oliver v. Givens* and *Vasilion v. Vasilion*.

**13.** The Virginia voluntary and fraudulent conveyance statutes diverge from the bankruptcy voluntary and fraudulent conveyance statutes on the issue of whether the trustee may avoid

▮ The same facts existed on October 10, 2003, as on March 22, 2001, the date of the first transfer of the home which was discussed above in considering the application of Va.Code (1950) § 55–80. However, the debtor's financial circumstances had deteriorated significantly by late 2003. He was called upon to honor the St. Anna's Home guarantee. St. Anna's Home ob-

tained a judgement against him. Statement of Financial Affairs, Question 4. The debtor attempted to negotiate a settlement with St. Anna's Home over a period of several months but received no response. Earlier, in March or April, 2002, the FBI seized all of his records, about 80 boxes of materials, and a grand jury later subpoenaed more.[14] In 2003, various individuals

a transfer of exempt property. *Oliver v. Givens, supra; Vasilion v. Vasilion, supra.* However, a trustee in bankruptcy may avoid such a transfer under § 548(a)(1)(A) and (B) of the Bankruptcy Code. *Tavenner v. Smoot.* In *Smoot,* the debtor transferred $217,059.25 to a corporation owned by his wife and children. *Id.* at 405. "Indisputably, had Smoot left the proceeds from the settlement of his FELA suit against CSX in his account, he could have exempted those proceeds from his bankruptcy estate under Virginia law, which creates a statutory exemption for money recovered in a personal injury action." *Id.* at 406. The Court of Appeals held that "transfers of potentially exempt property are amenable to avoidance and recovery actions by bankruptcy trustees." *Id.* at 407. It sustained the avoidance of the transfer under both § 548(a)(1)(A) and § 548(a)(1)(B).

The Virginia rule is based on the rationale that the creditor could never have reached the property in the first instance. If the transfer were avoided, it would revert to its prior ownership, an ownership beyond the reach of the creditor. The entire exercise would be futile.

The rationale underlying the bankruptcy rule rests on different grounds than the state law rationale. Almost all property interests of the debtor become property of the bankruptcy estate. 11 U.S.C. § 541. This is in stark contrast to the Bankruptcy Act of 1898 where the trustee was vested by operation of law with the bankrupt's title—"except insofar as it is to property which is held to be exempt"—to "property, including rights of action, which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered." Bankruptcy Act of 1898, § 70a. This meant that exempt property never became property of the estate and, because an individual debtor may not transfer his interest

in a tenancy by the entirety, property held as tenants by the entirety did not become property of the estate. *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903); *Phillips v. Krakower,* 46 F.2d 764, 765 (4th Cir.1931).

The Bankruptcy Code of 1978 changed this scheme. Now all property (with certain limited exceptions) becomes property of the estate. This includes a debtor's interest in tenancy by the entirety property and all property that may be claimed exempt in the bankruptcy case. *Greenblatt v. Ford (In re Ford),* 638 F.2d 14 (4th Cir.1981) *aff'g In re Ford,* 3 B.R. 559 (Bankr.D.Md.1980). Section 522(b) then permits a debtor to "exempt from property of the estate" certain enumerated property. 11 U.S.C. § 522(b). In most cases, the result under the Bankruptcy Act and the Bankruptcy Code will be the same, but not in all cases. One difference is with a claim of exemption of property recovered by the trustee. If a debtor fraudulently conveyed property before the commencement of the case, it does not become property of the estate upon commencement of the case. The trustee must avoid the fraudulent conveyance and recover the property to bring it into the estate. Section 522(g) allows a debtor to claim recovered property exempt to the same extent as if he had not transferred the property provided that it "was not a voluntary transfer of such property by the debtor" and the debtor did not conceal the property transferred. 11 U.S.C. § 522(g)(1). Thus, if a debtor voluntarily transfers property within the provisions of § 548(a)(1) and the trustee recovers the property, the debtor may not claim the property exempt from the bankruptcy estate. *Tavenner v. Smoot (In re Smoot),* 257 F.3d at 406. Unlike Virginia law which has no comparable provision, the exercise is not futile. The trustee ends up with the property, not the debtor.

**14.** Two years later he was indicted and on August 9, 2004, pled guilty to aiding in the

sued him, apparently for unpaid wages. The cases were either dismissed or paid from appeal bonds he posted after judgments were entered against him. Eleven such suits were listed in his statement of financial affairs, each ranging from about $740 to $1,420. His income from employment dropped from $50,000 in 2001 and 2002 to $10,000 in 2003. Statement of Financial Affairs, Question 1.[15]

Rovira confirmed the debtor's dire financial circumstances. He knew that the debtor and his wife needed help in keeping their house. He knew this from his discussion with Mrs. Laines and from his long, close friendship with Mr. Laines. The debtor was being pursued by creditors at the time of the October 10, 2003 transfer. Not only had St. Anna's House sued him, but he was also being sued by several other individuals for unpaid wages. The suits for unpaid wages not only show pending litigation but also strongly suggest that his new business venture had foundered.

The debtor's intent to hinder, delay or defraud his creditors by the October 10, 2003 transfer is clear. That intent is sufficient even though the transfer itself was not necessary to protect the asset from his creditors. *Tavenner v. Smoot.*[16]

### Conclusion

The March 22, 2001 transfer of the house and the March 26, 2001 transfer of the townhouse will be avoided under § 55–80 of the Virginia Code as implemented by § 544(b) of the Bankruptcy Code and both

properties will be recovered by the trustee from Mrs. Laines, Rovira and Perez under § 550(a) of the Bankruptcy Code. The debtor will be denied a discharge under § 727(a)(2) of the Bankruptcy Code as a result of his October 10, 2003 fraudulent transfer of the home.

---

preparation of false tax returns. He is awaiting sentencing. There was no testimony that the debtor did or did not expect to be indicted at the time of the transfers, but the evidence considered as a whole strongly suggests that he expected further difficulties.

**15.** No income from the operation of businesses or from other sources was shown in answer to Question 2 on the statement of financial affairs.

**16.** For the same reasons, the October 10, 2003 transfer of the home would be avoided under § 548(a)(1)(A) as a fraudulent transfer. While it is also fraudulent under Va.Code (1950) § 55–80, avoidance at state law is precluded by *Oliver v. Givens* and *Vasilion v. Vasilion.*