By order of the Bankruptcy Appellate Panel, the precedential effect
 of this decision is limited to the case and parties pursuant to
 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).

 File Name: 19b0002n.06

 BANKRUPTCY APPELLATE PANEL
 OF THE SIXTH CIRCUIT

 IN RE: CARLA RENEA SCARBROUGH, ┐
 Debtor. │
 ___________________________________________ │
 │
 SUSAN R. LIMOR, Trustee, > No. 18-8028
 Plaintiff-Appellee, │
 │
 │
 v. │
 │
 MICHELLE LEE ANDERSON, │
 │
 Defendant-Appellant.
 │
 ┘

 Appeal from the United States Bankruptcy Court
 for the Middle District of Tennessee at Nashville.
 No. 3:15-bk-03894; Adv. No. 3:17-ap-90076—Marian F. Harrison, Judge.

 Decided and Filed: March 28, 2019

 Before: BUCHANAN, DALES and OPPERMAN, Bankruptcy Appellate Panel Judges.

 _________________

 COUNSEL

ON BRIEF: Steven L. Lefkovitz, LEFKOVITZ & LEFKOVITZ, Nashville, Tennessee, for
Appellant. Erica R. Johnson, LIMOR & JOHNSON, Nashville, Tennessee, for Appellee.
 _________________

 OPINION
 _________________

 SCOTT W. DALES, Bankruptcy Appellate Panel Judge. This appeal emanates from an
adversary proceeding to avoid constructively fraudulent transfers, and the bankruptcy court’s
entry of summary judgment in favor of the plaintiff trustee. The appeal questions the court’s
 No. 18-8028 In re Scarbrough Page 2

ruling on a single issue: whether the summary judgment record included evidence sufficient to
require a finding that the debtor was insolvent at the time of the transfers.

 The Appellant in this case, Michelle Anderson (“Ms. Anderson” or the “Appellant”), is
the defendant in the adversary proceeding brought by Susan R. Limor, a chapter 7 trustee (the
“Trustee”). Pursuant to the parties’ stipulation to resolve the dispute on summary judgment
motions, the Trustee filed such a motion. After two hearings, the bankruptcy court entered
summary judgment in favor of the Trustee, finding that she met all the elements necessary to
avoid (and recover) the transfers as constructively fraudulent. Ms. Anderson now appeals from
that summary judgment.

 ISSUE ON APPEAL

 Whether the bankruptcy court erred in finding that Carla Scarbrough (the “Debtor”) was
insolvent on the date of the transfers, when the court’s insolvency calculation included only
those assets received by the Debtor in exchange for the transfer and the Debtor’s bankruptcy
schedules filed over a year later.1

 JURISDICTION AND STANDARD OF REVIEW

 The United States District Court for the Middle District of Tennessee has authorized
appeals to the Panel and no party has timely elected to have this appeal heard by the district
court. 28 U.S.C. § 158(b)(6), (c)(1). Ms. Anderson timely filed a notice of appeal.

 The Bankruptcy Appellate Panel has jurisdiction to review: (i) final judgments and orders
arising from a bankruptcy proceeding; and (ii) interlocutory orders (only with leave of the court).
28 U.S.C. § 158(a)(1)–(3). A judgment resolving all issues in an adversary proceeding is the

 1The Appellant framed the issues as: “1) Whether the Bankruptcy Court erred in finding that the Debtor
was insolvent at the time of any transfers between the Debtor and the Defendant without proof of insolvency
presented? 2) Whether the Debtor was insolvent at the time of the transfers between the Debtor and the Defendant?”
Appellant Br. at 15, Case No. 18-8028 ECF No. 10. Although the Appellant’s statement of issues questions the
insolvency of the Debtor at the time of two transfers — one on April 16, 2014 and the other on April 28, 2015, the
body of the Appellants’ brief only argues and discusses the Debtor’s insolvency at the time of the first transfer on
April 16, 2014. Thus, the Panel deems the insolvency question regarding the April 28, 2015 transfer as abandoned.
Hih v. Lynch, 812 F.3d 551, 556 (6th Cir. 2016) (“An appellant abandons issues not raised and argued in his initial
brief on appeal.”)
 No. 18-8028 In re Scarbrough Page 3

quintessential example of a final judgment from which an immediate appeal as of right lies under
28 U.S.C. § 158(a)(1). The adversary case is a discrete proceeding, and the judgment appealed
from leaves nothing for the trial court to do but supervise its execution. See Midland Asphalt
Corp. v. United States, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989); Ritzen Grp., Inc. v.
Jackson Masonry, LLC (In re Jackson Masonry, LLC), 906 F.3d 494, 497–98 (6th Cir. 2018).
Accordingly, the Panel has appellate jurisdiction to review the final judgment entered against
Ms. Anderson.

 The Panel will review the bankruptcy court’s decision granting summary judgment de
novo, notwithstanding the Trustee’s concession on appeal that a more deferential standard
applies to findings of fact. This is because Rule 56 precludes findings of fact at the summary
judgment stage, limiting the trial court’s task to simply identifying whether a genuine issue of
material fact exists for trial. Gold v. FedEx Freight East, Inc. (In re Rodriguez), 487 F.3d 1001,
1007 (6th Cir. 2007); West v. AK Steel Corp., 484 F.3d 395, 402 (6th Cir. 2007); Tatis v. U.S.
Bancorp, 473 F.3d 672, 674 (6th Cir. 2007). “Under a de novo standard of review, the reviewing
court decides an issue independently of, and without deference to, the trial court’s
determination.” Mettinger v. Accredited Home Lenders (In re Morgeson), 371 B.R. 798, 800
(B.A.P. 6th Cir. 2007).

 “The substantive law determines which facts are ‘material’ for summary judgment
purposes.” Hanover Ins. Co. v. Am. Eng’g Co., 33 F.3d 727, 730 (6th Cir. 1994) (citations
omitted). Whether the debtor was insolvent or rendered insolvent is an essential element in a
fraudulent transfer cause of action. As such, it is material in that it will affect the determination
of the underlying action. Tenn. Dep’t of Mental Health & Mental Retardation v. Paul B.,
88 F.3d 1466, 1472 (6th Cir. 1996). An issue is genuine if a rational trier of fact could find in
favor of either party on the issue. Schaffer v. A.O. Smith Harvestore Prods., Inc., 74 F.3d 722,
727 (6th Cir. 1996) (citation omitted).

 The Trustee, as the plaintiff in this action, bears the burden of proof at trial. Silagy v.
Gagnon (In re Gabor), 280 B.R. 149, 155 (Bankr. N.D. Ohio 2002) (“Trustee bears the initial
burden of proof, by preponderance of the evidence, on her fraudulent transfer claim.”). In such
cases, “the moving party’s initial summary judgment burden is ‘higher in that it must show that
 No. 18-8028 In re Scarbrough Page 4

the record contains evidence satisfying the burden of persuasion and that the evidence is so
powerful that no reasonable jury would be free to disbelieve it.’” Cockrel v. Shelby County Sch.
Dist., 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore’s
Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)). Because a bankruptcy court does not
usually conduct jury trials, perhaps a better way to describe the summary judgment analysis in
bankruptcy proceedings is to say that when the moving party bears the burden of proof at trial,
she must make a prima facie case strong enough to justify depriving the other party of her day in
court. Depending on who bears the burden of proof on a material issue, the moving party can
make this showing by using deposition testimony and affidavits; offering documentary evidence
that would be admissible at trial; and/or pointing the court to facts in the record that otherwise
preclude judgment for the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 324,
106 S. Ct. 2548, 2553 (1986).

 In addition, at the summary judgment stage the court cannot draw inferences in favor of
the moving party to make her case. Instead, when considering a summary judgment motion the
court must view the evidence and draw all reasonable inferences in favor of the non-moving
party, here Ms. Anderson. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S. Ct.
2505, 2512 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106
S. Ct. 1348, 1356 (1986).

 In the familiar trio of summary judgment decisions just cited, the Supreme Court has
analogized a motion for summary judgment to a motion for directed verdict, because both
remove the trial of factual questions from the finder of fact. If the movant under Rule 56
presents evidence that, if not controverted at trial, would entitle the movant to a Rule 50
judgment as a matter of law, that evidence must be accepted as true in a summary judgment
motion, when the party opposing the motion does not offer counter-affidavits or other
evidentiary material showing that a genuine issue remains to be tried, or that she is unable to
present facts justifying opposition to the motion under Rule 56(d). Celotex, 477 U.S. at 323, 106
S. Ct. at 2552; Liberty Lobby, 477 U.S. at 250, 106 S. Ct. at 2511 (standard for granting
summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)).
 No. 18-8028 In re Scarbrough Page 5

 Nevertheless, if the moving party cannot lay out all the elements of her claim by citing
facts supporting each element of her case, without the court drawing inferences in her favor, and
without demonstrating why the record is so one-sided as to rule out the possibility that the non-
moving party would prevail at trial, then the court must deny the motion, even if the opposing
party has not introduced contradictory evidence in response. Terry Barr Sales Agency, Inc. v.
All-Lock Co., 96 F.3d 174, 178 (6th Cir. 1996); Stryker Corp. v. XL Ins. Co., Inc., 57 F. Supp. 3d
823 (W.D. Mich. 2014), rev’d & remanded on other grounds sub nom. Stryker Corp. v. Nat’l
Union Fire Ins. Co. of Pittsburgh, PA, 842 F.3d 422 (6th Cir. 2016) (When the party moving for
summary judgment “bears the burden of persuasion at trial, the party’s initial summary judgment
burden is ‘higher in that she must show that the record contains evidence satisfying the burden of
persuasion and that the evidence is so powerful that no reasonable jury would be free to
disbelieve it.”); see Fed. R. Civ. P. 56 advisory committee’s notes (1963) (“Where the
evidentiary matter in support of the motion does not establish the absence of a genuine issue,
summary judgment must be denied even if no opposing evidentiary matter is presented.”)

 Thus, given the de novo standard of review and the materiality of insolvency in a
fraudulent transfer case, the Panel must determine, independently of the trial court’s finding,
whether the Trustee, as the moving party with the ultimate burden of proof, properly supported
her summary judgment motion with proof of insolvency so concretely that the bankruptcy court
was justified in directing judgment in her favor without first conducting a trial. Stated
differently, the Panel must determine whether the bankruptcy court was justified under the rules
in avoiding the transfers (and entering a substantial money judgment against Ms. Anderson)
without requiring the Trustee to prove “balance sheet” insolvency on the date of the transfer, and
without giving Ms. Anderson her “day in court.” It is not sufficient for the trial court simply to
predict which party will prevail at trial, even though the prediction may be shared by judges on
the reviewing court. Depriving a litigant of her day in court requires scrupulous adherence to the
rules governing summary judgment.
 No. 18-8028 In re Scarbrough Page 6

 BACKGROUND

 In June 2004, the Debtor and Ms. Anderson moved in together and merged their assets
with the intent of becoming domestic partners, apparently because, as a same sex couple, there
was no other option open to them at the time. They lived together for roughly ten years,
acquiring property and incurring debts and otherwise running their lives as other couples in the
same household customarily do. Before ending their personal relationship in 2013, they acquired
several pieces of artwork and two parcels of real estate in Murfreesboro, Tennessee — one
located on Brentmeade Drive and one on Cliffview Court.

 Although the couple parted ways in September 2013, they did not formally dissolve their
domestic partnership until April 16, 2014, when, without benefit of counsel, they executed a
form document entitled “Dissolution of Domestic Partnership” (the “Dissolution
Agreement,”). In the Dissolution Agreement, they decided to split the assets unevenly, with Ms.
Anderson receiving property totaling at least $174,890.21 in value including the Brentmeade
Drive and Cliffview Court2 properties, the artwork, and three vehicles, while the Debtor received
only three vehicles worth $7,800.28. Limor v. Anderson (In re Scarbrough), 588 B.R. 501, 504
(Bankr. M.D. Tenn. 2018); Dissolution Agreement at ¶¶ 1, 2, 5, Adv. No. 3:17-ap-90076 ECF
No. 18-3. The Debtor and Ms. Anderson also agreed that their debts would continue to be paid
by whomever was named as the indebted party. Dissolution Agreement at ¶ 9 (ECF No. 10-1-
1).

 The Debtor filed bankruptcy for the third time on June 8, 2015. She had previously filed
on February 21, 1997 (Case No. 3:97-bk-0172) and June 18, 2005 (Case No. 3:15-bk-03894),
events which the bankruptcy court cited in its opinion. In her most recent bankruptcy petition,
she listed her total assets as $53,630.00 and her total liabilities as $1,060,148.00. Scarbrough,
588 B.R. at 505. In its Memorandum and Order dated June 29, 2018, the bankruptcy court listed

 2Although the Debtor and Ms. Anderson agreed to divide their assets as reflected in the Dissolution
Agreement, apparently they also agreed that the Debtor could live in the Cliffview Court house for some period of
time. She vacated Cliffview Court in May 2014 and ultimately transferred her “share” of that property to Ms.
Anderson on April 28, 2015. She received nothing in return for the Cliffview Transfer. Scarbrough, 588 B.R. at
505. As noted above, Ms. Anderson has abandoned any challenge to this transfer by omitting from her appellate
brief all but the most perfunctory reference to it. See supra n.1.
 No. 18-8028 In re Scarbrough Page 7

various debts of the Debtor totaling a minimum of $124,800.00 dating back to at least April 16,
2014, the time of the Brentmeade Drive and artwork transfer (together, hereinafter referred to as
the “Brentmeade Transfer”). Scarbrough, 588 B.R. at 504–06. The Brentmeade Transfer and
the valuations reflect a time period that is well within the two-year look back period of 11 U.S.C.
§548, but more than a year before the filing of the Debtor’s most recent bankruptcy petition.

 DISCUSSION

 With respect to the Brentmeade Transfer, the bankruptcy court found that the Debtor:
(1) voluntarily transferred an interest in property within two years of filing the bankruptcy
petition; (2) received less than reasonably equivalent value in exchange; and (3) was insolvent at
the time of or became insolvent as a result of the transfers. 11 U.S.C. § 548(b)(1).3 Ms.
Anderson argues that the Trustee failed to offer sufficient evidence regarding the Debtor’s
insolvency, but concedes the Trustee established every other element of her case for avoidance
and recovery. Although she agrees that the bankruptcy court correctly defined insolvency using
the balance sheet test, she argues that the court did not apply the definition properly.

 Both the Bankruptcy Code and the bankruptcy court define insolvency as:

 (A) with reference to an entity other than a partnership and a municipality,
 financial condition such that the sum of such entity’s debts is greater than all of
 such entity’s property, at a fair valuation, exclusive of-- (i) property transferred,
 concealed, or removed with intent to hinder, delay, or defraud such entity’s
 creditors; and (ii) property that may be exempted from property of the estate
 under section 522 of this title[.]

11 U.S.C. § 101(32)(A). The bankruptcy court purported to apply the definition to the facts
stating:

 [T]he record reflects that the Debtor has a history of not paying her debts and of
 filing for chapter 7 bankruptcy . . . [O]n the date of the Brentmeade Transfer and
 the Artwork Transfer (April 16, 2014), the Debtor had liability of at least
 $124,800.00, which far exceeded the value of the assets the Debtor received

 3The constructive fraud provision of 11 U.S.C. § 548 does not require proof of intent; instead, the sole
issues are whether the debtor received less than reasonably equivalent value in exchange for the transfers in question
and whether the debtor was insolvent at the time of, or was rendered insolvent by, the transfers. Lingham Rawlings,
LLC v. Gaudiano (In re Lingham Rawlings, LLC), Adv. No. 10-3125, 2013 WL 1352320, at *26 (Bankr. E.D. Tenn.
2013).
 No. 18-8028 In re Scarbrough Page 8

 pursuant to the Dissolution Agreement (three vehicles with an aggregate value of
 $7,800.28) . . . Accordingly, the Court finds that the Debtor was insolvent on the
 dates of the Transfers or became insolvent as a result of the Transfers.

Scarbrough, 588 B.R. at 508 (emphasis added).

 The Appellant contends there was insufficient proof in the summary judgment record for
the Trustee to meet her burden of showing that the Debtor was insolvent on April 16, 2014, the
date of the Brentmeade Transfer. Rather, she argues that the bankruptcy court simply relied on
the fact that the Debtor did indeed have a history of not paying her debts as they became due, and
of filing multiple bankruptcy cases between 1997 and the present. She contends, however, that
the 1997 and 2005 bankruptcy filings have no relevance to the current case, and even if the June
2015 case filing is germane, it does not prove that the Debtor was insolvent on April 16, 2014.

 For her part, the Trustee disagrees that there was not enough evidence for the court’s
finding on insolvency and points out that beyond Ms. Anderson’s bare assertions, she did not
offer any affidavits or point to other evidence in the record questioning insolvency, and still
offers no facts or proof to the contrary, nor does she otherwise attempt to negate the Trustee’s
proof except through argument.

 Using the definition of insolvency under 11 U.S.C. § 101(32), also known as the “balance
sheet” approach as stated by the bankruptcy court, the Trustee would have to show the value of
all the Debtor’s assets and the extent of her liabilities at the time of the Brentmeade Transfer.
Some courts have found that a debtor’s schedules may be used to show insolvency (as the
Trustee did in this case) but only if the bankruptcy petition was filed close in time to the transfer
in question and a debtor’s financial situation has not changed significantly between the two
dates. Parlon v. Claiborne (In re Kaylor Equip. & Rental, Inc.), 56 B.R. 58, 62 (Bankr. E.D.
Tenn. 1985) (In establishing the insolvency of the debtor, a trustee may show that “the debtor
was insolvent at a reasonable time subsequent to the date of the alleged transfer, accompanied by
proof that no substantial change in the debtor’s financial condition occurred during the
interval.”).
 No. 18-8028 In re Scarbrough Page 9

 The bankruptcy court found that the Dissolution Agreement listed the couple’s
partnership assets, as follows:

 Description of Asset
 a. Real property known as 206 Brentmeade Drive, Murfreesboro, Tennessee
 (“Brentmeade Property”)
 b. Real property known as 1959 Cliffview Court, Murfreesboro, Tennessee
 (“Cliffview Property”)
 c. Art purchased during the relationship (“Artwork”)
 d. 2008 Mustang, Mark 1 package
 e. 2012 Nissan Pathfinder
 f. 2008 Honda Shadow 750 Motorcycle (Blue)
 g. 2007 Saab Turbo 9.3
 h. 2011 Nissan Titan
 i. 2008 Honda Shadow 750 Motorcycle (Maroon)

Scarbrough, 588 B.R. at 504. There is no statement regarding other assets, if any, that the
Debtor owned before, during, or after her partnership with Ms. Anderson. For instance, there is
no finding as to whether the Debtor brought assets into the relationship that remained with her
until the break-up — i.e., assets other than partnership assets. Moreover, other than a reference
to the previous bankruptcy cases (and the impermissible inference in the Trustee’s favor that the
previous filings meant the Debtor could not have had any assets of her own on the date of
transfer), the bankruptcy court pointed to nothing in the record establishing that the Debtor was
bereft of all property on that crucial date. Likewise, the court did not discuss or consider the
possibility that the Debtor might have acquired additional assets of her own during the
relationship or in the interim between their separation in 2013 and the execution of the
Dissolution Agreement in 2014. The bankruptcy court evidently drew inferences about the value
of the Debtor’s assets on the date of the Brentmeade Transfer — inferences in favor of the
Trustee.

 Further, the bankruptcy court found that the couple’s six motor vehicles were divided
equally, but that inequity resulted from Ms. Anderson’s receiving all the real property and the
 No. 18-8028 In re Scarbrough Page 10

artwork while the Debtor received nothing. In a footnote, however, the bankruptcy court states
that Ms. Anderson transferred a 50% interest to the Debtor in the Cliffview Property on October
30, 2013, which predated the Dissolution Agreement. Scarbrough, 588 B.R. at 505, n. 1. Yet,
the court goes on to find that the entire universe of the Debtor’s assets on April 16, 2014 (almost
five months later) was $7,800.28 — at a time when the Debtor still owned at least a one-half
interest in the Cliffview Property.

 In what appears to be more of a “reasonably equivalent value” analysis rather than an
insolvency analysis, the court stated that “on the date of the Brentmeade Transfer . . . (April 16,
2014), the Debtor had liability of $124,800, which far exceeded the value of the assets the
Debtor received pursuant to the Dissolution Agreement (three vehicles with an aggregate value
of $7,800.28).” Scarbrough, 588 B.R. at 508 (emphasis added). The bankruptcy court makes no
other statement regarding the value of the Debtor’s assets as of April 16, 2014.

 This dollar value of $7,800.28 in assets, however, is incorrect because the Debtor had at
least a 50% ownership in the Cliffview Property, and that ownership value was later found to be
$38,419.67. Scarbrough, 588 B.R. at 504. Still, there are no other findings about the Debtor’s
assets except those mentioned in the Dissolution Agreement and a reference to the bankruptcy
petition filed June 8, 2015, over one year later. The Panel recognizes that the Debtor’s liabilities
on the petition date substantially exceeded the value of her assets (at least according to the
schedules) but this does not excuse the Trustee from establishing that she meets the “balance
sheet” test as of the date of the Brentmeade Transfer over a year earlier.

 If the Trustee were presenting her case at trial, when the bankruptcy court could
permissibly draw inferences in her favor regarding, for example, the absence of any change in
the Debtor’s financial picture between the Brentmeade Transfer and the bankruptcy filing, she
may have been able to start with the Debtor’s financial condition on the petition date and
extrapolate back in time to show that the Debtor must have been insolvent on the transfer date.
This is sometimes called “retrojection.” Daneman v. Stanley (In re Stanley), 384 B.R. 788
(Bankr. S.D. Ohio 2008) (explanation of retrojection). Understandably, the Trustee did not do
this because in the context of the Motion, inferences should not have been drawn in her favor;
presumably there was no evidence in the record as to the Debtor’s financial condition at the time
 No. 18-8028 In re Scarbrough Page 11

of the transfer; and there is a relatively large gap between the filing of the petition and the
Brentmeade Transfer. Furthermore, although the bankruptcy court properly cited the balance
sheet test for insolvency, the test was not correctly applied under the circumstances. In
purporting to apply the balance sheet test to the Brentmeade Transfer, the court simply compared
the Debtor’s debts as of the time of the transfer to what she received under the Dissolution
Agreement, after prefacing the comparison with a reference to prior bankruptcy filings.
Scarbrough, 588 B.R. at 508. The error is understandable, in part, because the Trustee simply
pointed to the Debtor’s schedules to show that the Debtor was insolvent fourteen months earlier.

 Even at trial, using such a protracted time period between the transfer date and the
petition date would probably result in “stretching retrojection analysis past its breaking point.”
Stanley, 384 B.R. at 807. “The period of time over which retrojection has been approved ranges
from a few weeks to several months,” Bartl v. Twardy (In re Claxton), 32 B.R. 224, 232 (Bankr.
E.D. Va. 1983), but not years. “Insolvency determined as of one date may form the basis for the
inference that insolvency existed on another date if the dates are relatively close in time and if no
significant transactions occurred between the two dates.” Stanley, 384 B.R. at 808 (nearly two
year gap too long); Gold v. Laines (In re Laines), 352 B.R. 397, 402 n. 6 (Bankr. E.D. Va. 2005)
(holding that January 4, 2004 schedules and statement of financial affairs could not be used to
infer insolvency as of the date of transfers that occurred on March 22, 2001, March 26, 2001 and
December 26, 2002); Dahar v. Jackson (In re Jackson), 318 B.R. 5, 16–17 (Bankr. W.D. Ky.
2004) (over two-year gap was too long); Nicholls v. Jones (In re Jones), No. 02-12799, 2004 WL
826031 at *4 (Bankr. D. Colo. Feb. 5, 2004) (five-month gap was too long); Washington
Bancorporation v. Hodges (In re Washington Bancorporation), 180 B.R. 330, 334 (Bankr. D.C.
1995) (six-month gap was too long); War Eagle Floats, Inc. v. Travis (In re War Eagle Floats,
Inc.), 104 B.R. 398, 400 (Bankr. E.D. Okla. 1989) (six-month gap was too long).

 Nevertheless, for the Trustee to succeed in justifying summary judgment in her favor, she
must have shown concretely that the Debtor was insolvent, or became insolvent, at the time of
the Brentmeade Transfer or close in time to it. The Trustee cannot rely on evidence too far in the
past or future, because such evidence does not paint a clear picture regarding the Debtor at the
time of the transfer itself. Cf. Lisle v. John Wiley & Sons, Inc. (In re Wilkinson), 196 F. App’x.
 No. 18-8028 In re Scarbrough Page 12

337, 340 (6th Cir. 2006) (court cannot determine reasonable equivalent of a past transfer based
on present values); see generally, Hunter v. Sylvester Material Co. (In re Turkeyfoot Concrete,
Inc.), 198 B.R. 506 (Bankr. N.D. Ohio 1996) (trustee did not adequately prove the debtor’s
insolvency at the time of a “preferential” transfer in part because the evidence detailed the
debtor’s financial situation prior to the transfer, not as of the transfer date). Couple this with the
Trustee’s heightened summary judgment obligations due to her burden of proof at trial, as well
as the prohibition at the summary judgment stage against drawing inferences in the Trustee’s
favor, and the Panel concludes that the Debtor’s insolvency as to the Brentmeade Transfer is a
genuine issue of material fact that cannot be resolved on a motion for summary judgment
with the record presented to the bankruptcy court. The bankruptcy court must conduct
additional, albeit limited, proceedings to determine the value of the Debtor’s assets as of April
16, 2014 — the date of the Brentmeade Transfer.

 Finally, as noted above, given the absence of a serious challenge to the Cliffview
Transfer on appeal, the Panel finds no error in avoiding that transfer and holding Ms. Anderson
to account for the value she received beyond the value she gave to the Debtor in April 2015.
Even without a waiver of the challenge, the proximity between the execution of the schedules
and the Cliffview Transfer likely warranted the bankruptcy court’s retrojection analysis as to that
transfer.

 CONCLUSION

 If the inquiry on this appeal were whether the bankruptcy court guessed correctly about
who would prevail at trial — the Trustee or Ms. Anderson — the Panel probably would agree
with the court below and affirm. As trial judges who find facts without the benefit of juries, and
who strongly rely on inferences to fill gaps in a scanty record, it is tempting to accelerate the
ultimate decision when, based on past experience, a trial court believes it can see where the case
is heading at trial. The question as the Panel views it on appeal, however, is more nuanced and
technical.

 The question from the record and from the bankruptcy court’s own analysis is whether
the case for avoiding each transfer was strong enough to deprive Ms. Anderson of her day in
 No. 18-8028 In re Scarbrough Page 13

court, indulging every reasonable inference in favor of trial on the merits. Consequently, the
Panel finds that the bankruptcy court erred when it based its decision regarding insolvency as a
result of the Brentmeade Transfer solely on the financial information found in the Debtor’s
schedules and the value of the assets transferred pursuant to the Dissolution Agreement: the June
2015 bankruptcy schedules were too remote in time to the April 16, 2014 Brentmeade Transfer,
and the assets listed in the Dissolution Agreement were not necessarily the only assets belonging
to the Debtor.

 The bankruptcy court failed sufficiently to consider the Trustee’s trial burden when
evaluating the summary judgment record, and apparently drew inferences against Ms. Anderson
in conducting the insolvency analysis based on the Debtor’s several bankruptcy filings, tending
to supplant “balance sheet” insolvency with “equitable insolvency.” Consequently, the
bankruptcy court should have insisted on a stronger showing from the moving party before
depriving Ms. Anderson of her day in court on the issue of the Debtor’s insolvency at the time of
the Brentmeade Transfer.

 For the foregoing reasons, the decision of the bankruptcy court regarding the Cliffview
Transfer (as defined herein) is AFFIRMED but the decision regarding the Brentmeade Transfer
(as defined herein) is REVERSED and REMANDED for further proceedings consistent with this
opinion.